166 P.3d 738 (2007)
Jeff ZINK and Donna Zink, husband and wife, Appellants,
v.
CITY OF MESA, a Washington Municipal Corporation, Respondent.
No. 24322-2-III.
Court of Appeals of Washington, Division 3.
August 23, 2007.
*740 Ronald Francis St. Hilaire, Liebler Ivey Connor Berry & St Hilaire, Kennewick, WA, for Appellants.
Terry M. Tanner Jr., Tanner & Hui, Richland, WA, for Respondent.
STEPHENS, J.
¶ 1 Former RCW 42.17.340(3) (2002)[1] of the Public Disclosure Act (PDA) provides that the court, in reviewing agency action on public record requests, "shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience . . . to public officials." (Emphasis added.) The central issue in Donna and Jeff Zink's appeal is whether the sheer number of their public record requests of the City of Mesa (City), and the limited personnel resources of the City to fill those requests, justify the City's less than strict compliance with the PDA's provisions.
¶ 2 The trial court did not make specific findings on each of the PDA violations alleged by the Zinks. Instead, it found generally that the City had substantially complied with the Zinks' requests. We hold that "substantial compliance" is an incorrect standard by which to judge an agency's compliance with its statutory duties. We further hold that the record does not support the trial court's determination that the Zinks unlawfully harassed City officials or that the City met its obligations under the PDA. We therefore reverse and remand this matter to the trial court for determinations consistent with this opinion.

FACTS
¶ 3 This action had its beginnings in August 2002 when the City decided to "expire" a building permit it had issued to the Zinks to repair and remodel their fire damaged home. In support of its decision, the City cited neighbors' complaints about the home's exterior. The Zinks appealed to the City of Mesa Board of Appeals. They also began filing disclosure requests for public documents held by the City. The requests, by the City's count, totaled 172 over the period beginning July 30, 2002 and ending January 31, 2005.
¶ 4 Many of the Zinks' requests were linked to the decision on their building permit. In addition, some requests related to their self-described "watchdog type" role in the City. Clerk's Paper (CP) at 343. Ms. Zink is both a former councilwoman and a former mayor of the City. She stated in a declaration that "[m]y husband and I have been asking for records to investigate several complaints we have received from other Mesa residents. . . . Many of the residents are non-English speaking and many do not know their rights." CP at 343. Ms. Zink later testified it was her impression that these watch-dog activities generated the City's alleged resistance to filling her public record requests.
¶ 5 On April 30, 2003, the Zinks filed this action against the City. They alleged the City wrongfully denied or delayed many of their requests for access to and copies of public records maintained by the City. They further alleged the City wrongfully limited the time in which they could view public records and charged them excessive amounts for copies. They sought a court order compelling the *741 City to allow them to view the public records it had wrongfully withheld from them and to provide the Zinks copies of the documents at no more than the statutory maximum charge. They also asked for penalties of $100 for each day they were denied their rights under the PDA, as well as costs and reasonable attorney fees.
¶ 6 On February 27, 2004, the Zinks filed a motion under former RCW 42.17.340 for an order to show cause why the court should not enter findings granting them the relief requested in their complaint. Ms. Zink specifically argued in the show cause motion that the City had violated RCW 42.17.250 through .320 by failing to respond to the Zinks' requests within five days; failing to provide the records within the time the City in its responses stated that it would; causing unreasonable delays in record requests; wrongfully denying record requests; wrongfully redacting portions of records produced; failing to specifically state the bases for the City's denials of certain requests; charging excessive amounts for copying; and limiting the time in which the Zinks could view the public records to only one hour per work day.
¶ 7 At the hearing on the show cause motion, the trial court heard testimony from Jeff and Donna Zink, Anita Zink, City Clerk Teresa Standridge and Assistant City Clerk Carolyn Stephenson. On June 22, 2005, the court entered findings, conclusions, and an order denying the motion. Except in three instances, the court did not make specific findings on the numerous violations of the PDA alleged by the Zinks.[2] Instead, it entered a general finding that the City had "more than substantially complied" with all the requests. CP at 31. It concluded that there was a limit to the number of requests an individual can make to an agency, and it was a "practical impossibility" for the City to strictly comply with the Zinks' requests because of the sheer number of those requests and the City's limited manpower. CP at 32. The court further concluded that the Zinks' public record requests "amounted to unlawful harassment," and that the City did not engage in disparate treatment of the Zinks. CP at 30.
¶ 8 The trial court ordered judgment entered in favor of the City. The Zinks timely appealed.

ANALYSIS
A. Standard of Review
¶ 9 Former RCW 42.17.340(3) provides that judicial review of all agency actions taken or challenged under RCW 42.17.250 through 42.17.320 shall be de novo. While agencies have some discretion in establishing procedures for making public information available, the provision for de novo review confirms that courts owe no deference to agency interpretations of the PDA, but are charged with determining when a duty to disclose exists and whether a statutory exemption applies. See Hearst Corp. v. Hoppe, 90 Wash.2d 123, 130, 580 P.2d 246 (1978). When a record request is subject to the PDA, the burden of proof is on the agency to establish the applicability of a specific exemption. Id.
¶ 10 This court has never examined whether de novo review provided in former RCW 42.17.340(3) pertains to appellate review of a trial court's findings and conclusions following a show cause hearing at which live testimony is presented. Our Supreme Court has recognized de novo appellate review under the PDA only where agency action is being reviewed solely on a documentary record. O'Connor v. Dep't of Soc. & Health Servs., 143 Wash.2d 895, 904, 25 P.3d 426 (2001) (noting, "`[t]he appellate court stands in the same position as the trial court where the record consists only of affidavits, memoranda of law, and other documentary evidence'") (quoting Progressive Animal Welfare Soc'y v. Univ. of Washington, 125 Wash.2d 243, 252, 884 P.2d 592 (1994) (emphasis added)); see also Amren v. City of Kalama, 131 *742 Wash.2d 25, 32, 929 P.2d 389 (1997) (holding, "[b]ecause the trial court decided this case on the basis of affidavits, this court will review its decision de novo."). Previously when we have applied a de novo standard of review we have done so in this context. See Daines v. Spokane County, 111 Wash.App. 342, 346, 44 P.3d 909 (2002) (citing O'Connor, 143 Wash.2d at 904, 25 P.3d 426).
¶ 11 The Zinks urge us to engage in de novo review of the testimonial record, enter findings on the alleged PDA violations, and impose an appropriate remedy rather than remanding to the trial court. The Zinks cite Ockerman v. King County Department of Developmental and Environmental Services, 102 Wash.App. 212, 216, 6 P.3d 1214 (2000) in support of their argument that an appellate court, just as a trial court, reviews agency action de novo and enters its own findings of fact. See Appellants' Br. at 26. Ockerman does not support this argument, however, because the record in that case consisted only of documents, without courtroom testimony. When a trial court hears live testimony and judges the credibility of the witnesses, appellate courts consistently afford deference to its determinations of fact. See Org. to Preserve Agric. Lands v. Adams County, 128 Wash.2d 869, 882, 913 P.2d 793 (1996) (applying substantial evidence review following trial on issues under Open Public Meetings Act, chapter 42.30 RCW).
¶ 12 The provision for de novo review in former RCW 42.17.340(3) does not supplant this general principle, but rather serves to negate the usual deference that courts give to an agency's discretion in interpreting the rules governing it. Hearst Corp., 90 Wash.2d at 129-30, 580 P.2d 246. Thus, while we review de novo all questions regarding the City's obligations under the PDA, we review the trial court's findings of fact based on the testimonial record to determine if there is substantial evidence to support them. See Progressive Animal Welfare Soc'y, 125 Wash.2d at 252-53, 884 P.2d 592 (noting appellate court is not bound by trial court's findings of fact only where based solely on documentary record).[3]
B. Substantial Compliance
¶ 13 The PDA establishes a strong presumption in favor of full disclosure of public records by state and local agencies. Amren, 131 Wash.2d at 31, 929 P.2d 389; Am. Civil Liberties Union v. Blaine Sch. Dist. No. 503, 86 Wash.App. 688, 693, 937 P.2d 1176 (1997) (ACLU I). The central issue in this case is whether the trial court erred as a matter of law by applying a substantial compliance standard to its review of the City's actions in response to the Zinks' public disclosure requests. We hold this was error.
¶ 14 It has long been recognized that compliance with the PDA may impose an administrative burden on an agency entrusted with public records. Yet, administrative inconvenience or difficulty does not excuse strict compliance with the PDA. Hearst Corp., 90 Wash.2d at 131-32, 580 P.2d 246.
¶ 15 In Hearst Corporation, the appellant, a county assessor, argued that "the cost and excessive disruption to the department of assessments clearly outweigh[ed] the public benefit of disclosing [documents]." Id. The court quoted the provision of the PDA, which was codified at that time in former RCW 42.17.340(2) (1975), that judicial review "shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience . . . to public officials." Id. at 132, 580 P.2d 246. The court concluded that "[t]he act's provisions would appear to have specifically addressed appellant's arguments and declared them to be of insignificant impact compared with the stated public purpose of the act." Id. Further, "[t]he fact that the material may be available in other records is *743 not a reason stated in the act for failure to disclose." Id.
¶ 16 The court in Hearst Corporation also noted the various standards set forth in the PDA for agencies to meet, including provisions for prompt responses to record requests and specific written statements of reasons for denial of requests. Id. at 139, 580 P.2d 246. It commented that "[s]trict enforcement of these provisions where warranted should discourage improper denial of access to public records and adherence to the goals and procedures dictated by the statute." Id. at 140, 580 P.2d 246.
¶ 17 The City's argument here is similar to the argument rejected by the court in Hearst Corporation. The City insists  and the trial court agreed  that the City acted in good faith and did as good a job as it could have in the face of the numerous requests made by the Zinks to the City's clerk's office, which employs three to four people. It argues that its difficulty in responding to the Zinks' PDA requests was because of the Zinks "own behavior in requesting voluminous documents," Resp't's Br. at 12, and that the sheer number of requests and Ms. Zink's insistence on timely responses constituted unlawful harassment.
¶ 18 Unfortunately, the trial court did not enter findings of fact as to whether the City fulfilled the mandates of the PDA with respect to the specific violations alleged by Ms. Zink in her declarations.[4] While the court concluded that the City acted reasonably in responding to the Zinks, and that it was a "practical impossibility for the City of Mesa to strictly comply with Plaintiff's public disclosure requests due to the number of requests and limited manpower," it entered no findings as to the City's procedures, or lack thereof, to assure compliance. CP at 32. Nor did it determine whether the City had met its burden of showing that any of the documents sought by the Zinks were exempt from disclosure. See Amren, 131 Wash.2d at 31, 929 P.2d 389.[5]
¶ 19 Indeed, the trial court in its oral opinion agreed that the City's compliance may have been "short of total . . . hundred percent strict compliance with the act." Report of Proceedings (RP) at 543. But it concluded that, "given the uniqueness of this situation, the very, very limited number of personnel hours available in [the] city clerk's office, that . . . some allowance has to be made from absolute hundred percent strict compliance." RP at 544. The court also stated, "you [Zinks] were thoroughly one hundred percent provoked. I am not faulting you for any of your actions because most of all of your requests, the vast majority of your requests, had to do with your home or people involved in the decision as pertains to your home. . . . [But][i]n the process you really interfered with the operation of the clerk's office." RP at 544. The court concluded: "There is a limit to the number of public requests an individual can make to a public agency." CP at 32 (Conclusion of Law 2).
¶ 20 We do not doubt that the impact of the Zinks' requests on the clerk's office was significant. There is substantial evidence in the record to support the trial court's findings to this effect. However, the findings are immaterial to the legal issue before us, because the PDA requires strict compliance. See Hearst Corp., 90 Wash.2d at 130, 580 P.2d 246. The City's good faith or reasonableness does not determine whether it complied with the PDA in responding to the Zinks' record requests. Id. at 131-32, 580 P.2d 246. Good faith is only relevant to assessing the amount of damages to be awarded for violations of the PDA  an issue the trial court did not reach. Amren, 131 Wash.2d at 37-38, 929 P.2d 389. Similarly, the reasonableness of the City's actions does not excuse noncompliance with the PDA. Id. at 37, 929 P.2d 389. As our Supreme Court observed in Amren, "to require unreasonable conduct as the standard for award of penalties *744 would be inconsistent with the strong policy of the Act to discourage improper denial of access to public records." Id. at 37 n. 10, 929 P.2d 389. Finally, the PDA does not place a limit on the number of record requests an individual can make. We therefore hold that the trial court erred when it concluded substantial compliance with PDA provisions was sufficient.
¶ 21 The Zinks invite us to engage in de novo review of the testimony, enter findings on the alleged PDA violations under the strict compliance standard, and impose penalties, costs and attorney fees. We decline to do so, as the record before us includes several days of live testimony, which the trial court heard and weighed. The appropriate course is to remand to the trial court to make specific findings under the proper legal analysis and provide a suitable remedy. Dawson v. Daly, 120 Wash.2d 782, 792, 845 P.2d 995 (1993) (remanding for trial court to "apply our holding concerning the proper interpretation of [former] RCW 42.17.310(1)(j) [1989]" to findings). In any event, neither party has sufficiently identified the portions of the record that would support this court entering findings on each of the Zinks' three dozen allegations of PDA violations. We therefore remand to the trial court for entry of findings on whether the City complied (and not just substantially complied) with the PDA's mandates as to each of the Zinks' record requests. And, we direct the trial court to decide, in those instances in which the City denied the request, whether the record is exempt from disclosure or the City's conduct is otherwise excused under the PDA. Where the court's findings show a violation of the PDA, we leave it to the sound discretion of the trial court to impose appropriate penalties, costs and attorney fees.
¶ 22 It remains to decide whether the trial court erred in the instances in which it made specific findings sufficient to allow our review.
C. Time Limitation on the Zinks' Access to Public Records
¶ 23 The City restricted the Zinks' opportunity to view public records to one hour per day, from 10 to 11 a.m. See CP at 31. The trial court concluded that the City's action in this regard was "more than reasonable." CP at 32. This is not consistent with the specific requirement of the PDA. Former RCW 42.17.280 obligates an agency to make public records available "during the customary office hours of the agency" or at least "from nine o'clock a.m. to noon and from one o'clock p.m. to four o'clock p.m. Monday through Friday, excluding legal holidays." Time limitations that do not meet these requirements must be agreed to between the agency and the person seeking public records. Former RCW 42.17.280. Given the explicit language of this provision, we hold that the City violated the PDA when it limited the Zinks' access to public records to only one hour per day. On remand, the trial court is directed to determine an appropriate remedy.
D. Disparate Treatment
¶ 24 Former RCW 42.17.270 states that "[a]gencies shall not distinguish among persons requesting records." As evidence of disparate treatment, Ms. Zink cites the clerk's decision to limit her access to public records, and the fact the clerk recorded her activities at City Hall. She also alleges the clerk intentionally delayed filling her record requests in situations she believes the clerk would have handled expeditiously had the request come from another person.
¶ 25 The trial court's finding that the City did not treat Ms. Zink differently from other persons making public record requests is based on Clerk Standridge's testimony that she placed restrictions on Ms. Zink's access because she was falling behind in her other official duties, and that anyone who made the number of requests that Ms. Zink made would have been treated the same. She estimated that between August 2002 and April 2003, all of her assistant clerk's time and 50 percent of her own time was spent filling Ms. Zink's public record requests.
¶ 26 Former RCW 42.17.290 of the PDA addresses how agencies should cope with record requests that become so time consuming that other work is impacted. Specifically, the law provides that an agency is to adopt rules to prevent undue interference with the *745 agency's functions. It states in part: "Agencies shall adopt and enforce reasonable rules and regulations . . . consonant with the intent of this chapter to provide full public access to public records, to protect public records from damage or disorganization, and to prevent excessive interference with other essential functions of the agency." The City does not contend that it adopted any such rules.[6] Ms. Zink argues that the City could have instituted any number of measures to assure that PDA requests did not unduly interfere with the work of the office.
¶ 27 While the record contains substantial evidence to support the trial court's finding that the City would have treated other persons making a large number of public record requests the same as it treated Ms. Zink, such treatment nonetheless violated the PDA. The PDA does not allow an agency to justify its restriction of a citizen's access to records, after the fact, on the ground that it would have so restricted other citizens in similar circumstances. Absent the adoption of rules and regulations consistent with former RCW 42.17.290, the City's restriction of the Zinks' access to public records amounted to disparate treatment, in violation of former RCW 42.17.270. On remand, the trial court is directed to determine an appropriate remedy.
E. Unlawful Harassment
¶ 28 The trial court held: "Although provoked and possibly unintentional, Plaintiff unlawfully harassed the City of Mesa using the WPDA." CP at 31. Under RCW 10.14.020, unlawful harassment is defined as "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses or is detrimental to such person, and which serves no legitimate or lawful purpose."
¶ 29 The record does not support a finding of unlawful harassment. Although Clerk Standridge testified Ms. Zink "threatened" her, her description of Ms. Zink's conduct in this regard does not satisfy the statutory definition of unlawful harassment. RP at 377. Specifically, Ms. Standridge testified that Ms. Zink told her "you better do this," "look this up" and, "if you don't do this just right, I'm gonna sue ya." RP at 379. Ms. Standridge herself characterized Ms. Zink's "threats" as "nothing personal," and admitted she never felt that Ms. Zink was going to harm her physically. RP at 380.
¶ 30 Without questioning the trial court's view of the facts regarding Ms. Zink's conduct, we hold that it did not, as a matter of law, amount to harassment or excuse noncompliance with the PDA. Ms. Zink's conduct toward the city clerk was not directed at Ms. Standridge personally, but instead served the legitimate purpose of achieving lawful disclosure of public documents. The trial court erred when it found the Zinks' public record requests constituted unlawful harassment.
F. Request for Record of Complaint Against the Zinks' Home
¶ 31 The city council cited neighbors' complaints about the Zinks' home in support of its decision to expire the Zinks' building permit, and the Zinks' requested disclosure of records of such complaints. After making requests for files pertaining to the Zinks' address as well as files of the building official and of the City, Ms. Zink eventually obtained Exhibit 78, the minutes of the August 22, 2002 city council meeting. These minutes stated, "written complaint regarding Donna Zink's unfinished house reviewed." CP at 591. When Ms. Zink cited these minutes in a renewed document request for the written complaint, the City supplied her with Exhibit 79, a memo signed by the mayor, dated August 2, 2002. The memo stated, as follows: "Two citizens commented on unfinished construction on exterior of house. Complained about wood pile in back yard being a fire hazard." CP at 594.
¶ 32 The Zinks complain that either the City has not yet disclosed the written *746 complaint referenced in the city council minutes, or if Exhibit 79 is the only complaint the City improperly delayed producing the requested record. The trial court held the record was exempt from disclosure, citing no provision of the PDA to support this holding.
¶ 33 Former RCW 42.17.310(1)(i) exempts from disclosure "intra-agency memorandums in which opinions are expressed . . . except that a specific record shall not be exempt when publicly cited by an agency in connection with any agency action." (Emphasis added.) The memorandum at issue here falls within the italicized language. The City cited the citizen complaints referenced in the memo in support of its decision to expire the Zinks' building permit.
¶ 34 Ms. Zink's initial request was sufficient to notify the City that the internal memo described above fell within the category of documents Ms. Zink was requesting. The city council's own minutes reflected a "written complaint" had been reviewed concerning the Zinks' property. CP at 591. The complaint was not exempt from disclosure under former RCW 42.17.310(1)(i). We therefore reverse the trial court's disposition of this PDA request, and remand with instructions to determine an appropriate remedy for the City's improper denial or delay in responding to the Zinks' request.
G. Fees Charged for Public Records
¶ 35 The Zinks challenge the City's charges for reproduction of a video diskette and an audio tape, claiming they were excessive in violation of former RCW 42.17.300. This statute provides that "charge[s] shall not exceed the amount necessary to reimburse the agency . . . for its actual costs directly incident to such copying." (Emphasis added.) Former RCW 42.17.260(7)(b) provides that "[i]n determining the actual . . . costs for providing copies of public records, an agency may not include staff salaries, benefits, or other general administrative or overhead charges, unless those costs are directly related to the actual cost of copying the public records. Staff time to copy and mail the requested public records may be included in an agency's costs." (Emphasis added.) Former RCW 42.17.260(7) also provides that "[e]ach agency shall establish, maintain, and make available for public inspection and copying a statement of the actual per page cost or other costs, if any, that it charges for providing photocopies of public records and a statement of the factors and manner used to determine the actual per page cost or other costs, if any." (Emphasis added.)
¶ 36 Exhibit 124 is a copy of the City's minimum fee schedule. It provides that the City's fees may also include charges listed "in accordance with RCW 42.17.260(7)." CP at 703. The cited statute permits a fee that includes a charge for "staff time." Thus, the trial court correctly held that the fees charged to the Zinks for the diskette and tape were not limited to the actual cost of these items. There was no error.
H. Admission of Exhibit 216
¶ 37 Finally, the Zinks argue the trial court abused its discretion in admitting Exhibit 216, the city clerk's summary of the City's contacts with the Zinks. The Zinks contend that the exhibit is inadmissible hearsay, and also objectionable under ER 1006 as a "summary" of other records because the underlying records were never made available to the Zinks.
¶ 38 The City responds that the exhibit was properly admitted under ER 803(a)(6) as a business record, insofar as it is merely the city clerk's compilation of the City's interactions with the Zinks. Clerk Standridge testified that Exhibit 216 is a summary of the Zinks' requests from July 30, 2002 to January 31, 2005 that she prepared from notes maintained by her office.
¶ 39 ER 803(a)(6) provides that records of regularly conducted activity are not inadmissible as hearsay. Under RCW 5.45.020:
A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of *747 preparation were such as to justify its admission.
¶ 40 The trial court determined that the summary based on the City clerk's notes was admissible as a record made in the regular course of business, and we do not find that it abused its discretion in this regard. Contrary to the Zinks' argument, it is not necessary to the business records exception that the City show the clerk's office regularly took notes of every citizen's requests for public records.
¶ 41 The Zinks additionally contend that, even if the notes were admissible as business records, the summary was not because the City failed to provide the underlying notes to the Zinks. They rely upon ER 1006, which provides that "[t]he contents of voluminous writings . . . which cannot conveniently be examined in court may be presented in the form of a . . . summary. The originals . . . shall be made available for examination or copying." (Emphasis added.) The Zinks admit they did not specifically raise ER 1006 before the trial court, but that "ER 1006 . . . was essentially the objection made." Appellants' Br. at 38. The record confirms that counsel, in response to the trial court's reliance on the business record exception, stated, "[t]hen my objection is let's see the business records." RP at 395. He referred to this objection as separate from the hearsay objection. Id.
¶ 42 Accepting the trial court's view of Exhibit 216 as a business record, ER 1006 nonetheless allows the admission of such a summary only when the underlying records are made available to the opposing party. The trial court relied upon Exhibit 216 in determining that the Zinks made voluminous record requests. Because we must remand for further determinations by the trial court, the appropriate remedy is to allow the trial court to direct the parties to satisfy the conditions of ER 1006 if it chooses to consider Exhibit 216.
I. Penalties for PDA Violations
¶ 43 The Zinks ask this court to impose penalties against the City for violating the PDA, pursuant to former RCW 42.17.340(4). We conclude the determination of appropriate penalties is best left to the trial court, which in conjunction with making specific findings as to each of the Zinks' PDA requests, must exercise its discretion to award penalties in an amount "not less than five dollars and not to exceed one hundred dollars for each day that [the Zinks were] denied the right to inspect or copy said public record." Former RCW 42.17.340(4). An appellate court's function is to review a trial court's exercise of discretion in awarding penalties, not to exercise such discretion itself. See Yousoufian v. King County Executive, 152 Wash.2d 421, 430-31, 98 P.3d 463 (2004). Moreover, while a penalty must be imposed between the statutory minimum and maximum for each PDA violation, the amount of such penalty may depend in part on the existence or absence of bad faith in strictly complying with the PDA's provisions. See Limstrom v. Ladenburg, 136 Wash.2d 595, 617, 963 P.2d 869 (1998). This remains for the trial court to determine, under a proper interpretation of the PDA's requirements.
¶ 44 On remand, the trial court is directed to impose statutory penalties on a per-day, per-request basis, in an amount it determines to be appropriate in light of the relevant circumstances. Yousoufian, 152 Wash.2d at 430-39, 98 P.3d 463; ACLU I, 86 Wash.App. at 698-99, 937 P.2d 1176 (remanding for trial court to assess penalties, attorney fees and costs).
J. Attorney Fees and Costs
¶ 45 The Zinks seek an award of their attorney fees and costs, both at the trial court and on appeal, based on former RCW 42.17.340(4) and RAP 18.1. Former RCW 42.17.340(4) provides for such an award if the party seeking disclosure prevails. "Prevailing" pertains to "the legal question of whether the records should have been disclosed at request." Spokane Research & Defense Fund v. City of Spokane, 155 Wash.2d 89, 103-04, 117 P.3d 1117 (2005). The amount of costs and reasonable attorney fees to be awarded must relate to the portion of costs and fees involved in successfully compelling disclosure of information. Am. Civil Liberties Union v. Blaine Sch. Dist. No. 503, 95 *748 Wash.App. 106, 111-20, 975 P.2d 536 (1999) (extended discussion of factors for trial court to consider in assessing penalties, costs and attorney fees).
¶ 46 While it is clear at this juncture that the Zinks have prevailed to some degree in showing certain PDA requests were improperly denied, it remains for the trial court to determine whether the City failed to comply in other instances, under an actual, not substantial compliance analysis. Accordingly, the extent to which the Zinks have prevailed in this matter is best determined by the trial court. We therefore grant the Zinks' request for attorney fees and costs, including on appeal, and remand to the trial court for a determination of the amount of such fees and costs. ACLU I, 86 Wash.App. at 699, 937 P.2d 1176.

CONCLUSION
¶ 47 The PDA is a strongly worded mandate for full public access to information concerning the workings of government. It requires strict compliance with its provisions, not simply substantial compliance. We direct the trial court on remand to enter findings on whether the City strictly complied with the PDA in every instance identified by the Zinks. Where the City has violated the PDA, we leave it to the sound discretion of the trial court to award penalties, costs and attorney fees to the Zinks, including costs and fees incurred in this appeal. Amren, 131 Wash.2d at 37-38, 929 P.2d 389.
WE CONCUR: SCHULTHEIS, A.C.J., and KULIK, J.
NOTES
[1] In this opinion, we cite to the 2002 version of the PDA effective when the Zinks filed their action in April 2003. Provisions of the PDA were subsequently recodified in the Public Records Act, chapter 42.56 RCW, effective July 1, 2006.
[2] The three exceptions are the trial court's finding that the City's restriction of the Zinks to one hour per day for viewing public records was reasonable (Finding of Fact (FF) 5); its finding that there was no written complaint against the Zinks' home subject to the PDA (FF 6); and its finding that the Zinks were never charged more than $0.15 per photocopy (FF 9). CP at 31. The Zinks assign error to these findings, and related conclusions of law.
[3] A trial court's imposition of penalties under the PDA is reviewed for abuse of discretion. Yousoufian v. King County Executive, 152 Wash.2d 421, 430-31, 98 P.3d 463 (2004). As discussed below, on remand the trial court must exercise its discretion to determine appropriate penalties after reviewing the City's actions under the proper strict compliance standard mandated by the PDA. It must also determine the amount of costs and reasonable attorney fees to award the Zinks for their successful efforts in compelling full compliance with the PDA.
[4] As noted, there were three instances in which the court made findings sufficient to allow our review. These are addressed below.
[5] The one exception is with respect to the Zinks' request for a complaint filed against their home. The trial court held there was no written complaint, but only a memorandum regarding complaints, which was exempt from disclosure under the PDA. As discussed below, this was error.
[6] We reject the City's argument that this provision supports a holding that the PDA will not be strictly enforced where such enforcement interferes with the agency's functions. The statute does not excuse noncompliance; it merely provides that an agency can adopt rules to provide for compliance with the PDA in a manner most conducive to the orderly administration of business.