IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ERIC HOOD,<br><br>　　　　　　　Appellant,<br>　　v.<br><br>CITY OF NOOKSACK,<br><br>　　　　　　　Respondent. | No. 82081-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Eric Hood appeals the trial court's dismissal of his Public Records Act[1] (PRA) claim against the City of Nooksack. Hood contends the City violated the statute when it responded to his records request by referring him to the State Auditor's Office's website, failing to conduct a search for responsive records, and failing to disclose certain documents it received from the auditor. For the reasons discussed below, we reverse the trial court's order dismissing Hood's lawsuit and remand for further proceedings consistent with this decision.

## I. BACKGROUND

This lawsuit arises from Eric Hood's request for records from the City of Nooksack, located in Whatcom County. In January 2019, Hood sent an e-mail message to Virginia Arnason, the City's clerk treasurer:

> I heard the City was recently audited by the state. Can I please have all records that the City got from the auditor and all records of the City's response to the audit or to the auditor's report? Please send the records in electronic format by email or I can make a dropbox.

---

[1] Chapter 42.56 RCW.

Citations and pin cites are based on the Westlaw online version of the cited material.

Four days later, Arnason responded,

> That information is available online on the Washington State Auditor's office website. Any audit they do the [sic] all the information is posted on their site.
>
> Hope this helps.

Hood later replied,

> Thanks for referring me to the State Auditor's office website. Please let me know if you have any other records.

Arnason's final response stated,

> It was a clean audit so the city didn't have any responses to the audit, or vice versa.

Almost a year after this exchange, Hood, representing himself, initiated a lawsuit against the City. Among other things, Hood alleged that the City violated the PRA by failing to adequately search for responsive documents, failing to properly respond to his request, and withholding documents he requested. He sought an order requiring the City to produce the requested records and explain any documents withheld. He also sought an award of costs and penalties under RCW 42.56.550.

The City moved for summary judgment. The City claimed that it fully complied with the PRA when it referred Hood to the Washington State Auditor's Office website, where Hood could access the only documents the City "believed to be responsive" to his request—two reports the Auditor published following its 2018 audit of the City.

The City provided Arnason's declaration in support of its motion. Arnason explained that in August 2018, the Auditor conducted a legally-mandated

2

seasonal audit of the City for the years 2015-2017. She described the audit process as follows:

> In keeping with the practice of these audits, the City provided the auditors with open, on-site access to its records at City Hall. Boxes of our records were pulled for the relevant years and made available to the auditors who manually reviewed these documents at City Hall during business hours. If the auditors had any questions, we assisted them as needed. The auditors operated independently and the City did not monitor them or otherwise track which documents they were reviewing, or monitor any other aspect of their work.

According to Arnason, upon completing the audit in September 2018, the Auditor conducted an "exit interview" with the City and then published two reports, a "Financial Statements Audit Report" and an "Accountability Audit Report," on September 24, 2018. Arnason indicated that the City was able to access the reports by going to the Auditor's website. Arnason stated that the City paid the Auditor $15,207 for the audit.

As to Hood's January 2019 request, Arnason believed that Hood "was seeking the auditor's reports themselves." Presumably because she was aware of those documents and where to locate them, she did not say that she conducted any search of the City's records in response to Hood's inquiry. Arnason also believed there were no City responses to the audit because the City merely made documents available and after the auditors issued a "clean" audit, the City had no response. Arnason's declaration included attachments, including portions of the audit reports and invoices documenting the City's payments to the Auditor.

Hood opposed the City's motion, contending that the City violated the PRA by "improperly direct[ing] [him] to another agency's website and fail[ing] to produce a single record." Hood challenged the City's interpretation of his request and pointed out that attachments to Arnason's declaration showed that the City had received invoices and payment receipts from the auditor.

After retaining counsel, Hood filed a second response and cross motion for summary judgment. Hood asked the court to deny the City's motion because undisputed facts showed that the City violated the PRA by withholding responsive records. Hood urged the court to grant partial summary judgment in his favor on the same basis. In the declaration supporting his motion, Hood identified a September 2018 letter the Auditor sent to the City, which the City had not mentioned or provided. Hood also noted the City's failure to provide receipts or other records of payment until after he initiated his complaint.

The trial court heard argument on the motions, and on August 26, 2020 issued an "Opinion and Order Granting Summary Judgment Dismissal" of Hood's lawsuit.[2] The court found, as a factual matter, that the "City had no correspondence directly with the State Auditor's office regarding the audit" and "no communication with the State Auditor's office after the audit." The court also found that the City properly "conducted a search and referred [Hood] to the responsive record."

---

[2] The order effectively resolved both motions by dismissing Hood's lawsuit, without expressly denying his cross motion.

The court concluded that the City did not violate the PRA:

> [T]he City responded to Hood's PRA request in an adequate manner. The request sought "all records that the City got from the auditor" and "all records of the City's response to the audit or the auditor's report." The City's response was accurate: it had received no records from the auditor other than the auditor's report, posted on the auditor's website, and it have not made a response to the audit or the auditor's report.

In reaching this conclusion, the court observed the City did not provide a hyperlink to the Auditor's website, as required by RCW 42.56.520(1)(b), but characterized the PRA violation as "de minimis" because it caused "no confusion or prejudice to anyone." And finally, the court concluded that in asking for "all records the City got from the auditor," Hood made a "specific and narrow" request that did not encompass all records "related" to the audit.

On September 8, 2020, 13 days after the court issued its order, Hood moved for reconsideration. The court heard argument and denied the motion in an October 7, 2020 order. The court denied the motion as untimely and "for the reasons stated" in its order of dismissal. Hood appeals.

## II. ANALYSIS

### A. Timeliness of Appeal

As a jurisdictional and threshold matter, the City moves to dismiss Hood's appeal as untimely. It says that Hood did not timely move for reconsideration and therefore, his motion failed to extend the time to file a notice of appeal. The City thus contends that the time to appeal ran from the date the court entered the order granting summary judgment, and not from the date the trial court denied reconsideration.

5

We review de novo the application of court rules to a particular set of facts. State v. Branstetter, 85 Wn. App. 123, 127, 935 P.2d 620 (1997). To establish appellate jurisdiction, a party must timely file their notice of appeal. Deschenes v. King County, 83 Wn.2d 714, 716, 521 P.2d 1181 (1974); O'Neill v. Jacobs, 77 Wn. App. 366, 369, 890 P.2d 1092 (1995). A party typically has 30 days after entry of a trial court decision to seek review in this court. RAP 5.1(a); RAP 5.2(a). "[C]ertain timely motions," including a motion for reconsideration under CR 59, may extend the deadline. RAP 5.2(e). But an untimely motion for reconsideration does not extend the 30-day time limit. Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wn.2d 366, 367-68, 849 P.2d 1225 (1993) (untimely service of motion for reconsideration that was timely filed with the court did not extend the 30-day deadline).

CR 59(b) requires a party to move for a new trial or for reconsideration not later than 10 days after the entry of the judgment, order, or other decision. The parties agree that the deadline for filing Hood's motion for reconsideration was September 8, 2020, as adjusted for the Labor Day holiday in accordance with CR 6(a). It is undisputed that Hood moved for reconsideration on that date. But Hood's motion included only his digital signature –"/s/ Eric Hood"– and not his physical signature.

The City relies solely on GR 17(b)(3) to contend that court rules do not allow a process server to certify an "unsigned court filing." The City says that because Hood's motion only has his digital signature, it was incomplete and therefore, not timely. GR 17(b)(3) pertains to "facsimile transmission" and

6

provides, in pertinent part, that a "document transmitted to another for filing with the clerk of the court will be deemed filed when presented to the clerk in the same manner as an original document." But the rule does not address the validity of a document that bears an electronic or digital signature, which a party files or arranges for filing with the court clerk.[3] Other General Rules allow attorneys and nonattorneys to sign electronically-filed documents with a digital signature or an "s/." GR 30(d)(2).[4]

Even assuming that without Hood's physical signature, his motion for reconsideration was untimely, Hood filed, on the same date, a separate signature page that bore a physical signature.[5] In these circumstances, we conclude that Hood timely moved for reconsideration and reject the City's argument that this court lacks appellate jurisdiction. We deny the request to dismiss Hood's appeal.[6]

---

[3] The parties did not address timeliness at the hearing on Hood's motion for reconsideration and nothing in the record appears to indicate the basis for the court's ruling.

[4] RCW 1.80.010(10) defines "electronic signature" as a "sound, symbol, or process" that is associated with a record and "executed or adopted by a person with the intent to sign the record."

[5] The signature page was attached to a certificate of service. A few days later, on September 11, Hood filed a second declaration, with another attached signature page that also included his physical signature.

[6] The City alternatively contends that we must dismiss Hood's appeal because he failed to provide a complete record on review. The party seeking appellate review has the burden of providing an adequate record for review. Stevens County v. Loon Lake Prop. Owners Ass'n, 146 Wn. App. 124, 131, 187 P.3d 846 (2008); RAP 9.2(b)). This includes "those portions of the verbatim report of proceedings necessary to present the issues raised on review." RAP 9.2(b). The record on review does not include the transcript of the summary judgment hearing or every document listed in the RAP 9.12 order designating the record on review. But our review is de novo, and the record appears to include all substantive filings related to the parties' motions for summary judgment. We thus decline to dismiss the appeal on this basis.

B. Compliance with the PRA

Turning to the merits, Hood says the City violated the PRA when it (1) responded to his request by directing him to another agency's website, and (2) "silently" withheld records that were responsive to his request. Amici curiae, Washington's Coalition for Open Government, Allied Daily Newspapers of Washington, and Washington State Association of Broadcasters, submitted briefing in support of Hood's appeal. They urge us to adhere to the standard of strict compliance for responses to PRA requests, as set forth in Zink v. City of Mesa, 140 Wn. App. 328, 340, 166 P.3d 738 (2007), and to reject the City's invitation to review its response under a "reasonableness" standard.

We review de novo a state entity's or agency's compliance with the PRA. RCW 42.56.550(3); see also Neigh. All. of Spokane County v. Spokane County, 172 Wn.2d 702, 715, 261 P.3d 119 (2011). And in such a matter, we are not bound by the trial court's factual findings. Cornu–Labat v. Hosp. Dist. No. 2, 177 Wn.2d 221, 229, 298 P.3d 741 (2013).

Ordinary summary judgment burdens and standards apply in PRA cases. Bldg. Indus. Ass'n of Wash. v. McCarthy, 152 Wn. App. 720, 735-36, 218 P.3d 196 (2009). We review de novo a trial court's summary judgment ruling and apply the same standard as the trial court. Neigh. All., 172 Wn.2d at 715. Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). We review all evidence and reasonable inferences in the light most favorable to the nonmoving party and consider only the evidence that was

brought to the trial court's attention.  Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015); RAP 9.12.

Well-established principles govern our review of PRA actions.  The PRA "is a strongly-worded mandate for broad disclosure of public records."  Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978).  The purpose of the act is "'nothing less than the preservation of the most central tenets of representative government, namely, the sovereignty of the people and the accountability to the people of public officials and institutions.'"  Wade's Eastside Gun Shop, Inc. v. Dep't of Labor & Indus., 185 Wn.2d 270, 277, 372 P.3d 97 (2016) (quoting Progressive Animal Welfare Soc. v. Univ. of Wash., 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (PAWS)).  The PRA effectuates the policy that "free and open examination of public records is in the public interest."  Neigh. All., 172 Wn.2d at 715.  We interpret and apply the PRA so as "to enforce the law's overall purpose."  Rental Hous. Ass'n of Puget Sound v. City of Des Moines, 165 Wn.2d 525, 536, 199 P.3d 393 (2009).  Thus, we construe the PRA "liberally . . . to assure that the public interest will be fully protected."  RCW 42.56.030.

RCW 42.56.080 requires agencies to make "identifiable public records" available for public inspection and copying.  A public record subject to disclosure under the PRA includes (1) any writing, (2) containing information relating to the conduct of government, or the performance of any governmental or proprietary function, that is (3) prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.  RCW 42.56.010(3).  Upon receipt of a request for public records, an agency must respond within five

9

business days in one of the following ways by: (a) providing the record, (b) providing "an internet address and link on the agency's web site to the specific records requested," (c) acknowledging the request and providing an estimate of the time it will take to respond, (d) acknowledging the request and seeking clarification, or (e) denying the request. RCW 42.56.520(1) (emphasis added).

Below, Hood focused on the City's conclusion that the audit reports themselves were the only documents responsive to his request and its failure to disclose other documents related to the audit. He stated, in passing, that the City "improperly direct[ed] [him] to another agency's website." But he did not quote the language of RCW 42.56.520(1)(b) that requires the agency to provide an "internet address and link on the agency's web site" or otherwise call attention to the discrepancy between the City's response and the manner in which the statute allows an agency to provide records by directing a requester to the internet. Still, the trial court addressed the City's noncompliance with RCW 42.56.520(1)(b) when it referred Hood to the Auditor's website without providing the hyperlink. But the court concluded that the City's violation of the statute was technical and excusable because it did not prejudice Hood.

Contrary to the trial court's ruling, our courts have long-recognized strict enforcement of the PRA's mandates to disclose public records. Hearst, 90 Wn.2d at 131-32. As amici point out, in Zink, 140 Wn. App. at 332, Division Three of this court expressly rejected a substantial compliance standard to

10

evaluate compliance with similar provisions of the PRA's predecessor statute.[7]

In Zink, a former mayor of a small city submitted 172 records requests over a period of two and a half years that mainly related to a cancelled building permit. Id. at 333. The trial court dismissed Zink's lawsuit alleging violations of the former statute after determining that, given the number of requests and the city's limited resources, strict compliance was impractical and the city had substantially complied with the requests. Id. at 335. On appeal, the court reversed the dismissal because "'substantial compliance' is an incorrect standard by which to judge an agency's compliance with its statutory duties." Id. at 333. The court held that neither "administrative inconvenience or difficulty will not excuse strict compliance" with the statute. Id. at 337. The court explained what while "good faith" may be relevant to the penalty assessed, neither the good faith nor "reasonableness" of the responding agency determines its compliance with the statute. Id. at 340. Later cases confirm the requirement of "strict compliance with the public disclosure obligations" of the PRA. See Gendler v. Batiste, 174 Wn.2d 244, 252, 274 P.3d 346 (2012); see also Rental Housing Ass'n, 165 Wn.2d at 535.

Under this standard, we do not consider whether it was reasonable to refer Hood to the Auditor's website. Likewise, the issues of whether Hood objected, whether the response enabled Hood to obtain the requested reports, or

---

[7] Washington voters enacted the Public Disclosure Act by initiative. LAWS OF 1973, ch. 1 (Initiative 276, approved Nov. 7, 1972). The legislature later amended and recodified the public disclosure act as the Public Records Act (PRA) in 2005, moving it from chapter 42.17 RCW to chapter 42.56 RCW. LAWS OF 2005, ch. 274.

whether he demonstrated prejudice of any kind are not relevant to our analysis. The only consideration is whether the City responded to Hood's request in any of the ways the statute prescribes. The City did not. It did not respond by providing any documents or by providing an internet address and link to documents on the City's website. The trial court erred in concluding as a matter of law that the City did not violate the PRA and granting the City's motion on that basis.

Hood also claims that the City violated the PRA when it did not search for records and, without claiming any exemptions, produced no responsive documents. Specifically, Hood points to the City's failure to mention or disclose (1) three invoices from the Auditor, which the City produced in support of its motion for summary judgment and (2) a September 18, 2018 letter to City management that one of the audit reports references.[8]

"Agencies must make a sincere and adequate search for records." Fisher Broadcasting-Seattle TV v. City of Seattle, 180 Wn.2d 515, 522, 326 P.3d 688 (2014). "The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents." Neigh. All., 172 Wn.2d at 720. "[T]he focus of the inquiry is not whether responsive documents do in fact exist, but whether the search itself was adequate." Neigh. All., 172 Wn.2d at 719-20. Where the agency possesses undisclosed responsive records, it "must explain and justify any withholding, in

---

[8] Hood mainly argued below that "boxes of records" the City "pulled" and made available to auditors were responsive records. But these records were neither records the Auditor provided to the City nor City "responses" to the audit, they were not responsive to Hood's request. In any event, Hood appears to have abandoned this claim on appeal.

whole or in part, of any requested public records." Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 432, 327d P.3d 600 (2013). The statute prohibits "[s]ilent withholding." Id. 177 Wn.2d at 432; PAWS, 125 Wn.2d at 270.

The record does not support the trial court's findings that the City "conducted a search," "had no correspondence directly with the State Auditor's Office," and "had no communication with the State Auditor's office after the report was posted." [9] According to Arnason's sworn statement, she "did not believe that there were any documents that were responsive" to Hood's request, apart from the audit reports. She did not indicate that she searched or otherwise attempted to verify her assumption and the City conceded as much. Documents in the record indicate that there was some correspondence or communication between the City and the Auditor at the conclusion and following the audit.

Although not dispositive, the record suggests the existence of some limited number of records outside of the reports themselves that appear responsive to Hood's request. Considering that Hood's request for "all records" was not confined to the audit reports, there are questions of fact as to whether it was reasonable or adequate to conduct no search or inquiry to determine what records, if any, fell within the scope of Hood's request. See RCW 42.56.100 (requiring agency to provide "fullest assistance" to requesters).

---

[9] The trial court declined to address whether the City's failure to disclose invoices or payment receipts violated the PRA, based on the misperception that Hood raised the issue for the first time on reconsideration.

13

The record does not support the court's determination that the City complied with the PRA by conducting an adequate search and disclosing all records responsive to Hood's request.

Also, the factual record is not sufficiently developed as to what records the City would have uncovered if the City had conducted a search in response to Hood's request. Genuine issues of material fact preclude summary judgment in Hood's favor as to the extent and nature of documents the City withheld as a result of the failure to search its records upon receiving Hood's request.

### III. Attorney Fees and Costs

Under the PRA, a person who prevails "in any action in the courts seeking the right to inspect or copy any public record" is entitled to an award of "all costs, including reasonable attorney fees" incurred in connection with the legal action. RCW 42.56.550(4).

Consistent with RAP 18.1(i), we direct the trial court to determine the appropriate cost and attorney fee award for those costs Hood incurred in the trial court. [10] We also reserve to the trial court an appropriate award of costs on appeal at the conclusion of the case, subject to Hood's submission of an itemized cost affidavit in the trial court. See RAP 14.2. In addition, RCW 42.56.550(4)

---

[10] We note that counsel represented Hood during only a portion of the proceedings below and we have held that nonlawyers litigating PRA actions pro se incur no attorney fees and are not entitled to receive attorney fee awards under RCW 42.56.550(4). Mitchell v. Wash. State Dep't of Corrections, 164 Wn. App. 597, 608, 277 P.3d 670 (2011) ("[P]ro se litigants are generally not entitled to attorney fees for their work representing themselves."). See also In re Marriage of Brown, 159 Wn. App. 931, 938–39, 247 P.3d 466 (2011) (citing Leen v. Demopolis, 62 Wn. App. 473, 486-87, 815 P.2d 269 (1991)) (Washington courts have awarded attorney fees to pro se litigants only when those litigants were themselves attorneys because they must take time from their practices to prepare and to appear like any other lawyer would).

gives the court discretion to award a per diem penalty for withheld records. "The trial court is in the best position to make an individual, fact-driven inquiry into what PRA penalties are necessary to achieve the penalty provision's goal of deterring unlawful nondisclosure." Wade's, 185 Wn.2d at 280; Yousoufian v. Office of Ron Simms, 168 Wn.2d 444, 467-68, 229 P.3d 735 (2010).[11] We defer this discretionary award to the trial court.

We reverse the opinion and order granting summary judgment dismissal. We remand for further proceedings consistent with this opinion.

_____
Chun, J.

WE CONCUR:

_____    _____
Andrus, A.C.J.              Mann, C.J.

---

[11] The PRA does not authorize a separate penalty for conducting an inadequate search. RCW 42.56.550(4); see Sanders v. State, 169 Wn.2d 827, 860-61, 240 P.3d 120 (2010) ("although the PRA does not expressly sanction a separate penalty for a brief explanation violation, the violation may aggravate the penalty for wrongfully withholding a record").