**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ANDREA CANTU, | ) | |
| | ) | No. 37996-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YAKIMA SCHOOL DISTRICT NO. 7, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Andréa Cantu believed her daughter was being bullied at school. Over the course of two years she made three requests for records from the Yakima School District. Her first request was made in October 2016. In January 2017, Ms. Cantu clarified this request. In April 2018, Ms. Cantu made two requests seeking more records. The District failed to adequately respond to these requests. In September 2018, Ms. Cantu filed a complaint seeking damages for violating the Public Records Act (PRA), ch. 42.56 RCW. Over the course of several motions, the court denied most of her claims. Ultimately, the court determined that 85 "emails" responsive to her January 2018 clarification were wrongfully withheld for 631 days and assessed a per diem penalty of $10 per day, or a total penalty of $6,310.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

On appeal, Ms. Cantu raises five issues. We affirm the trial court's interpretation of her October 2016 request, but we reverse and remand on the other four issues.

First, we hold that the District failed to meet its burden of showing that its search for records in response to Ms. Cantu's January 2017 clarification was reasonably calculated to uncover all relevant records. The inadequate search not only failed to discover responsive records, but it constituted an aggravating factor that the court did not consider when calculating the per diem penalty.

Second, we reverse the trial court's summary judgment order dismissing Ms. Cantu's claim for denied records. We hold that when an agency ignores a request for an extended period of time, such inaction may constitute the constructive denial of records. In this case, the evidence establishes that the District ignored one of Ms. Cantu's April 2018 requests for an extended period of time, thus wrongfully denying her the records she had requested.

Third, we hold that the District's narrow interpretation of Ms. Cantu's April 2018 requests was based on an unreasonable assumption. Consequently, the District wrongfully withheld at least 75 email attachments on the basis that they were nonresponsive to Ms. Cantu's April 2018 requests. To the extent that any exemptions apply to those email attachments, the records can be redacted and provided.

Finally, we find that the $10 per diem penalty imposed for wrongfully withholding 85 email records for 631 days was inadequate and constitutes an abuse of discretion. On

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

remand, the court will need to recalculate how many records have been wrongfully withheld and determine the appropriate per diem penalty for those wrongfully withheld records.

## BACKGROUND

During 2016, Ms. Cantu's daughter, AM, suffered multiple incidents of harassment, intimidation, and bullying at Davis High School in Yakima. Ms. Cantu sought assistance from the school but ultimately petitioned for protection orders from the court. In an attempt to gather records to support her petition for a protection order, Ms. Cantu requested records from the Yakima School District. The District's response was inadequate, which lead Ms. Cantu to request additional documents over the next several years. The lengthy chronology of her communications with the District is set forth below.

### A. MS. CANTU'S OCTOBER 2016 RECORDS REQUESTS

On October 27, 2016, Ms. Cantu submitted her first records request on a form created by the District. Her request read: "Description of records requested: All incidences/incident reports where [A] was a victim of bullying, threats, harassment, etc. Dates: April 2016-present." Clerk's Papers (CP) at 438. She indicated that the intended use of the records was to support a petition for an anti-harassment order.

3

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

On November 7, the District's public records officer, Kirsten Fitterer,[1] responded to Ms. Cantu by email, apologizing for not seeing the request, and indicated that she would "get back to you with a timeline." CP at 639. Ms. Fitterer indicated that Ms. Cantu would be receiving "a formal letter acknowledging your request was received," but did not provide a time estimate for responding to Ms. Cantu's request. CP at 639. A 5-day letter was not sent.

On November 9, Ms. Fitterer contacted the Davis High School Vice Principal, Bob Stanley, about the records request. He provided "several records" the same day from his "hard copy file," including emails, and indicated that others would come from the Skyward system and the "Harassment, Intimidation, Bullying (HIB) system" operated by the Office of Student and Family Services. CP at 571, 643. He indicated that additional statements needed to be obtained from another staff member who was out of the office and he emailed this staff member. Ms. Fitterer also contacted the office manager of the Department of Student and Family Services, who provided three reports that same day, November 9.

---

[1] Ms. Fitterer began working as the District's PRA officer in 2016. Although she had no prior experience with PRA requests, Ms. Fitterer indicated that she read some online resources and participated in 45 minutes of PRA training in November 2016. Her supervisor received PRA training 10 years prior to the lawsuit but did not refresh this training until after Ms. Cantu's lawsuit was filed.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

On January 20, 2017, Ms. Cantu sent a follow up email to Ms. Fitterer inquiring about the status of her request because she had "not received ANY info regarding this request submitted over 2 months ago." CP at 649. On January 24, Ms. Fitterer emailed Ms. Cantu to apologize for the delay and admitted she "dropped the ball" and requested Ms. Cantu come by the school to review the records. CP at 648. Ms. Fitterer realized that she had not kept Ms. Cantu informed. "Dropped the ball" meant that she had not followed up with the vice principal for additional records. CP at 1158.

On January 30, a phone call took place between Ms. Fitterer and Ms. Cantu. Ms. Cantu verbally extended her October request through January 30, 2017, and clarified that she wanted emails. Ms. Fitterer sent two follow-up emails that day. The second email indicated that if the email system search did not yield additional records that the request would be closed.

Ms. Fitterer proceeded to email the vice principal and other staff about the expanded request, and they provided one new HIB report from the three previously sent. Ms. Fitterer also emailed the District's technology director, Andy Gonzalez, requesting an email search and attached Ms. Cantu's October 2016 request where Ms. Fitterer wrote "Revised to 1/30/17" and included her initials. CP at 667.

Ms. Fitterer provided three redacted HIB reports and "other records" to Ms. Cantu by email. The email stated "Our tech department is performing a formal search of our email system. If that search produces additional records (through today's date), I will

5

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

forward them to you.  If it does not, I will advise you and this request will be closed."  CP

at 663.  No exemption log was provided for the redactions from the HIB reports.

On February 2, the District's technology director ran two searches of the District

email archive system for the date range of April 1, 2016 through February 2, 2017, using

the following search terms:

- [A] AND bullying OR HIB
- [A] AND harassment OR intimidation OR bullying
- [A] AND [M]

CP at 538-39.  The search identified 85 email records as potentially responsive.  The

District's technology director was not confident that all emails related to the incidents

were provided, given the search terms used.

On February 2, the technology director emailed his search results to Ms. Fitterer

for review in the form of a link to PST[2] files on the District's network along with

directions on how to open the PST files.  Ms. Fitterer could not open them except to view

the "headers" which merely showed "Sender," "Recipient," "Message-Id," and "Subject,"

but did not display content.  CP at 3232.  She needed technical assistance but did not ask

even though she knew "tech" services could have opened them.  School board member

emails were not searched even though they were aware of the issues with Ms. Cantu's

daughter.

---

[2] Personal Storage Table file, which is a file format Microsoft programs use to store items like email messages.

6

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

On February 3, Ms. Fitterer emailed Ms. Cantu that "Our tech services department has completed their search of our email system and there are over 80 email records." CP at 673. She indicated a need for additional time for review but estimated that she could "have them to you by Wednesday February 15, 2017 or will contact you will [sic] an updated fulfillment date." CP at 673.

At an unknown date, Ms. Fitterer provided hard copies of the email headers to Ms. Cantu. Ms. Fitterer apparently assumed, based on a phone conversation, that Ms. Cantu would review the headers and specifically identify which emails she wanted from the headers. Ms. Fitterer did not confirm this assumption in writing. Ms. Cantu denied agreeing to this limitation and indicated that Ms. Fitterer only told her during the call that she was redacting the headers, but Ms. Cantu did not understand what she meant. Ms. Cantu did not agree to accept or review only headers in lieu of requested emails.

No communication between the District and Ms. Cantu occurred for the next 10 months. Ms. Fitterer "assumed that Ms. Cantu had all the email records she wanted because I had not heard back from her." CP at 575.

B. MS. CANTU'S APRIL 2018 RECORDS REQUESTS

On April 5, 2018, Ms. Cantu submitted two records requests to the District. In the first request, she asked for "ALL HIB forms from December 2017 Re: [AM]." CP at 679. In her second request, she requested: "ALL emails including the text of the

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

messages Re: [AM] from April 2016 to present." CP at 680. Ms. Fitterer responded to

Ms. Cantu by email the same day, stating "Thank you for your email. I will be out of the

office March 30 through April 6th. I will get back to you asap." CP at 1590.

On April 9, Ms. Fitterer responded to the new records request and indicated "I do

not have my files with me but it seems we have provided this information previously.

Can you remind me?" CP at 441. Ms. Cantu responded: "I did request copies of my

emails in the past, however they did not contain any messages . . . . I would like ALL

emails with the messages." "Also, a lot more incidences have occurred since my last

request, therefore I am in need of past emails to the present." "Please contact me if you

need further clarification on my request." CP at 556. Ms. Fitterer did not forward the

April 5 requests to anyone else for assistance. No formal five-day letter with a response

time estimate was sent.

On April 23, Ms. Fitterer emailed Ms. Cantu asking "On the emails, I need further

clarification. My memory of your last request was that you had a lot of the emails

already and wanted to look through a list of email headers so you could determine if any

were missing. Once you told me which ones you needed I would do the redaction and

send them to you. Are you now saying you want all redacted emails from the date you

specified? Depending on the quantity of emails that could take 30-120 days. Please

clarify your preference." CP at 556.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

That same day, Ms. Fitterer produced 9 HIB reports to Ms. Cantu "in response to one of the April 5, 2018, public records requests." Ms. Fitterer's email to Ms. Cantu indicated: "The following records are responsive to your recent HIB public record request. They have been redacted for student and staff names. This will close your public record request." CP at 762.

On April 25, Ms. Cantu thanked Ms. Fitterer for the HIB reports and reiterated her request for "all emails in their entirety, of course I understand some things need to be redacted." CP at 757.

On April 26, Ms. Fitterer emailed a search request to the technology director, who estimated that he could not get to it until after May 18 or May 24. Sometime thereafter, the technology director and Ms. Fitterer discussed refining the search terms.

On May 3, Ms. Fitterer emailed a letter to Ms. Cantu estimating that a response to her second April 5 request may be available by July 16, 2018, and it may be necessary to produce records in installments.

On June 8, Ms. Fitterer emailed Ms. Cantu's attorney, who had now taken over Ms. Cantu's records requests, along with several unrelated requests. Ms. Fitterer indicated that due to the large scope of the responsive records, "we are suspending all outstanding response deadlines and postponing our production of responsive records to

9

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

you for a three-week evaluation period." CP at 535.[3] The District indicated it would

"reassess the amount of time reasonably necessary to respond without causing excessive

interference with District operations." CP at 535. "We invite you to please let us know

by June 22 which of your requests you would like the District to prioritize. We will also

continue providing you periodic progress updates regarding your requests and look

forward to sending you the updated response timeline." CP at 535.

During this same period of time, Ms. Fitterer requested help from supervisors 10

times due to increasing numbers of PRA requests in 2017 and 2018, but the District

declined to provide assistance claiming lack of available resources.

On June 11, Ms. Cantu's attorney responded to Ms. Fitterer by citing: the delays

since April 2018, missing attachments, and demanding authority for the suspension of

efforts. The attorney then submitted a significant number of additional PRA requests

unrelated to Ms. Cantu's requests. Ms. Fitterer responded to Ms. Cantu's attorney saying

"Suspension is not the correct term. I apologize." "To clarify, the District is not

suspending its efforts to respond to your Public Records Act requests. As indicated in my

email from Friday, the District is evaluating how best to process your multiple records

requests so as to provide complete and accurate responses in compliance with the PRA

while at the same time not unduly disrupting District operations." "We will follow up by

---

[3] We impute communications sent or received by the parties' attorneys to the parties themselves.

10

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

June 29th with a revised schedule and revised installment deadlines." CP at 2613. No follow-up occurred.

On July 2, the District's technology department searched the email archive system using terms "[A] AND [M]" for the period between "4/1/2016 and 4/1/2018." CP at 490. The search yielded 3,200 potential results, which were provided to Ms. Fitterer on the same day in the "RFI"[4] folder and email notification. Ms. Fitterer did not produce these emails to Ms. Cantu at this time, as she did not finish reviewing them until October 6.

The District failed to meet its estimated response date of July 16, 2018, and failed to provide any communication to Ms. Cantu about her April 5 request for emails. In her declaration, Ms. Fitterer indicated that she was primarily occupied by other projects during the summer and occasionally working on other public records requests.

On August 3, Ms. Cantu emailed Ms. Fitterer asking the status of her record request. Ms. Fitterer did not respond.

On August 28, Ms. Cantu asked again for a status update from Ms. Fitterer. Ms. Fitterer emailed back that the public records office "was closed for the summer so opened yesterday." CP at 579, 766. During discovery, the District clarified that while Ms. Fitterer and her secretary were out of the office for a time, the office was not closed. Ms.

---

[4] Request for information.

11

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

Fitterer later admitted that she owed Ms. Cantu an explanation "but didn't have time to give [it] to her." CP at 1178. No updated response time estimate was provided.

On September 13, as a record response, Ms. Fitterer emailed Ms. Cantu's attorney a web link to an empty "Google Drive" electronic file directory.

On September 24, Ms. Cantu filed a complaint in the Yakima County Superior Court against the District.

On October 1, Ms. Fitterer emailed Ms. Cantu that she was reviewing and redacting the email records with an anticipated production date of October 6. She promised to "have an installment to you even sooner." CP at 768. Ms. Fitterer "started working immediately" on the emails sometime during the week of October 1, although she also vaguely indicated reviewing them sometime after August 28.

On October 4, Ms. Fitterer produced 68 pages of emails to Ms. Cantu as an "installment." CP at 580. "In reviewing your public record requests form (attached) and some emails we exchanged for clarification (also attached) I am interpreting that you want the text in the emails versus just the email headers." CP at 770.

On October 6, Ms. Fitterer informed the District's technology services director that she had reviewed the 3,200 emails from the July 2 search and requested an additional search be done for emails with new search terms since "many are missing." CP at 562. Ms. Fitterer characterized Ms. Cantu's request as her "top priority" because of the lawsuit. "The lawsuit definitely made me go back and review." CP at 1182.

12

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

The same day, Ms. Fitterer emailed Ms. Cantu that the review of the 3,200 emails was "completed" but that "the search efforts undertaken in July 2018 may have missed some potentially responsive records." CP at 580. Ms. Fitterer extended her production estimate date to October 13, and attached 63 pages of responsive emails.

On October 9, Ms. Fitterer provided "another installment" of 48 pages to Ms. Cantu, and indicated that further searches of the network were being performed.

On October 10, the technology services director performed another email search using the date range of "09/01/2016-09/28/2018" and terms of "1999@yahoo.com" and "[A] AND [Stanley]." CP at 508. This search produced 401 emails, which were delivered to Ms. Fitterer that same day.

On October 11, the technology services director performed a search, which produced another 11,000 results. These were reduced to 3,365 potentially responsive email records that were provided to Ms. Fitterer the same day. Ms. Fitterer stated that she received 400 additional email records on October 10 and 3,350 on October 11. She reviewed the records over the next several days, including the weekend.

C. 75 EMAIL ATTACHMENTS

On October 13, 2018, Ms. Fitterer emailed Ms. Cantu that she could pick up the thumb drive with 398 email records responsive to the April 2018 request for emails because the records were too large to provide by email. Some of the records included

13

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

duplicate copies of the "records provided on October 4, 6 and 9, 2018." CP at 581.

While the thumb drive contained copies of emails, it did not contain thousands of pages

of attachments associated with the 398 email records. A redaction and exemption log

was not included. The attached letter read "The District considers this request complete.

No further action will be taken by the Yakima School District related to this request."

CP at 782. Ms. Fitterer chose to exclude attachments and did not confirm the exclusion

with Ms. Cantu. She was also aware that the technology services director had searched

the wrong time frame.

On October 19, the District provided Ms. Cantu with an exemption log for the

redacted HIB reports turned over January 30, 2017, citing FERPA[5] personal information.

Prior to this date, exemption logs had not been provided.

On October 26, the District provided additional emails previously withheld related

to Ms. Cantu's request for emails on January 30, 2017. The exemption log that was

attached, identified personal information redactions per FERPA.

In November, Ms. Fitterer received a three hour PRA group training from an

attorney. According to Ms. Fitterer, the District's technology services director, received

PRA training at the November 2018 group session. Mr. Gonzalez's subordinate in the

[5] Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g.

14

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

technology services department never received any PRA training despite being tasked with developing the new District public records response application.

In late December, the District ran another search that yielded no new records.

On January 10, 2019, the District claimed it provided Ms. Cantu a spreadsheet documenting the emails provided on October 13, 2018, and the missing attachments to 56 of the emails along with an exemption log for another 75 emails. The log cites FERPA for personally identifiable information as the same explanation for redacting all 75 attachments.

On the same day, the District ran another search with expanded parameters using "[A]" and wildcards for the words "threat," "harass," "bull," "intimidate," a witness's name, AM's nickname and "HIB," for the date range of "4/1/2016-5/1/2018." CP at 542.

On January 17, Ms. Cantu reasserted her demand for attachments for the previously produced emails. During Ms. Cantu's deposition, she clarified that her April 2018 request was for any email that had "anything that had to do with my daughter" regardless of whether the email pertained to bullying or anything else. CP at 3691. Ms. Cantu would not agree to the District withholding any documents or attachments.

On January 18, the District's attorney sent Ms. Cantu's attorney a letter clarifying its request to withhold the 75 email attachments instead of redaction due to size, volume, and a lack of responsiveness to harassment. The District admitted that attachments were not disclosed on October 13, 2018, and claimed discovery remained incomplete. Ms.

15

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

Cantu refused to agree to withholding, re-asserting "ALL means all" to the District. CP at 391.

On January 28, the District sent a letter to Ms. Cantu with an attached exemption log supposedly highlighting the 75 emails in dispute asserting FERPA personally identifiable information. The District provided an estimated timeline for production of the remaining attachments.

D.  CONTINUING SEARCHES AND RECORDS PRODUCTION

On January 30, 2019, the District sent a letter to Ms. Cantu outlining the search terms used on January 10, 2019, and providing additional redacted records along with an exemption log. Each record was responsive to Ms. Cantu's January 2017 request for emails pertaining to the harassment, intimidation, and bullying of Ms. Cantu's daughter.

On January 31, Ms. Cantu emailed the District, reasserting her request for all emails.

On February 12, the District performed another search for emails responsive to Ms. Cantu's April 5 request to include shortened versions of names along with wildcards: "A[M]* AND Nancy OR Mchenry" and "A[M]* AND Amanda OR jewel*" for "4/1/2016-5/1/2018." CP at 543.

On February 19, the District produced the 13 new records relating to the April 5, 2018 request, with an exemption log. Most of the records, both emails and HIB reports

16

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

dating from 2016, discussed harassment incidents involving AM and are highly

responsive.

On March 1, 2019, the District modified 778 records with previous redactions

from the October 13, 2018 production.  It also provided 7 new emails not previously

released in October 2018.

In September 2019, the District hired new in-house counsel to handle PRA

requests.  The in-house counsel was able to clear the backlog and process an additional

110 requests by September, 2020.

## ANALYSIS

Ms. Cantu raises several substantive issues pertaining to the District's responses to

her multiple records requests.  We consider the policy and presumptions of the PRA

before addressing her specific issues.

A.  WASHINGTON'S PUBLIC RECORDS ACT[6]

The PRA mandates full disclosure of public records except for limited exemptions

provided by the Act.  *Washington Pub. Employees Ass'n v. Wash. State Ctr. for*

*Childhood Deafness & Hearing Loss*, 194 Wn.2d 484, 491, 450 P.3d 601 (2019).  The

PRA requires all state and local agencies to disclose any requested public record, unless

---

[6] The former Public Disclosure Act (PDA), ch. 42.17 RCW (2005), was recodified as the Public Records Act (PRA), ch. 42.56 RCW.  *Soter v. Cowles Pub. Co.*, 162 Wn.2d 716, 750, 174 P.3d 60 (2007) (affirming and clarifying procedure).  The text of the acts are substantially the same.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

the record falls within a specific exemption. *Progressive Animal Welfare Soc'y v. Univ.*

*of Wash.*, 125 Wn.2d 243, 250, 884 P.2d 592 (1994) (plurality opinion) (*PAWS* II). There

is a strong presumption in favor of full disclosure. *Zink v. City of Mesa*, 140 Wn. App.

328, 337, 166 P.3d 738 (2007) (*Zink* I) (citing *Amren v. City of Kalama*, 131 Wn.2d 25,

31, 929 P.2d 389 (1997)). Washington courts have long held that the PRA must be

liberally construed to promote full access to public records. *Progressive Animal Welfare*

*Soc'y v. University of Wash.*, 114 Wn.2d 677, 682, 790 P.2d 604 (1990) (*PAWS* I) (citing

former RCW 42.17.251 (2005)). Interpretations of the Freedom of Information Act are

helpful in construing the PRA. *Id*. To serve the goal of transparent government, agencies

are required to adopt rules and regulations that "provide for the fullest assistance to

inquirers and the most timely possible action on requests for information." RCW

42.56.100.

  The procedures for responding to a PRA request were outlined in *Soter v. Cowles*

*Pub. Co*., 162 Wn.2d 716, 750, 174 P.3d 60 (2007):

> The [PRA] requires agencies to respond to public records requests within
> five business days. RCW 42.56.520. . . . The agency must either provide
> the records, provide a reasonable estimate of the time the agency will take
> to respond to the request, or deny the request. *Id*. Additional time may be
> required to respond to a request where the agency needs to notify third
> parties or agencies affected by the request or "to determine whether any of
> the information requested is exempt and that a denial should be made as to
> all or part of the request."

*Id*.

18

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

The PRA does not limit the number of requests an individual can make. *Zink* I, 140 Wn. App. at 340. Strict enforcement promotes adherence to the goals of the statute. *Id*. at 338.

*Procedures and Standard of Review*

Ms. Cantu filed suit under the PRA to address her dispute with the District without moving for a show cause hearing under RCW 42.56.550. The District brought motions for declaratory judgment and summary judgment. Both parties dispute the procedures available to resolve PRA claims. We review the available procedures to address these issues and determine the appropriate standard of review.

There are several procedures available for determining the merits of a PRA claim. RCW 42.56.550 provides for a show cause hearing under two circumstances. A requester can move for a show cause hearing to determine if an agency has wrongfully denied a request or has provided an unreasonable estimated time of production. RCW 42.56.550(1), (2). The show cause hearing is generally an evidentiary hearing. And while it may be conducted entirely on affidavits or declarations, the agency carries the burden to establish that its actions are reasonable and comply with the PRA. RCW 42.56.550.

The procedures outlined in RCW 42.56.550 are not exclusive. *Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d 89, 104-05, 117 P.3d 1117 (2005). Other "normal civil procedures" such as intervention, declaratory judgment and writ are appropriate methods to prosecute a claim under the PRA. *Id*. at 105. An agency seeking

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

adjudication that it is in compliance with the PRA can file a complaint for declaratory

judgment. *Benton County v. Zink*, 191 Wn. App. 269, 277-78, 361 P.3d 801 (2015) (*Zink*

II) (affirming by declaratory judgment that no duty exists under the PRA to provide a

record response in electronic versus paper format). Injunctive relief may be sought if the

agency or person named in the responsive records would be harmed by the release of

those records. RCW 42.56.540; *Soter*, 162 Wn.2d at 751-52.

If the underlying facts are not in dispute, either party may move for summary

judgment. CR 56(c). While similar in appearance to an evidentiary hearing on affidavits,

there are material differences to a summary judgment hearing. For instance, in

considering a motion on summary judgment, the facts are considered in a light most

favorable to the nonmoving party and summary judgment is generally appropriate only if

there are no genuine issues of material fact and the moving party is entitled to judgment

as a matter of law. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

We review all questions regarding an agency's obligations under the PRA de

novo. RCW 42.56.550(3); *Zink* I, 140 Wn. App. at 337 (citing *PAWS* II, 125 Wn.2d at

252-53). Fact-finding hearings on PRA claims are unique. When the trial court enters

findings on disputed evidence presented solely in the form of affidavits, the reviewing

court is not bound by the trial court's findings on disputed factual issues. *PAWS* II, 125

Wn.2d at 252-53 (citing *Smith v. Skagit County*, 75 Wn.2d 715, 453 P.2d 832 (1969)). In

such circumstances, the reviewing court stands in the same position as the trial court. *Id*.

20

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

Penalty calculations under the PRA are reviewed for abuse of discretion.

*Yousoufian v. Office of Ron Sims*, 152 Wn.2d 421, 430-31, 98 P.3d 463 (2004)

(*Yousoufian* I).

We turn now to the specific issues raised by Ms. Cantu on appeal.

B.  SCOPE OF OCTOBER 2016 RECORDS REQUEST

The first issue we address is the scope of Ms. Cantu's October 2016 records

request.  Ms. Cantu's first request for records was submitted on a school District form

that read: "Description of records requested" and Ms. Cantu filled in the form with the

language "All incidences/incident reports where [AM] was a victim of bullying, threats,

harassment, etc.  Dates: April 2016-present."  CP at 438.  The District interpreted this as

a request for incident reports.  In January 2017, Ms. Cantu clarified that she wanted all

records, including emails, regarding her daughter and incidences of bullying, threats, and

harassment.  These records were eventually provided, but the District acknowledges that

its response was untimely.

Determining the appropriate penalty for a PRA violation involves two steps: "(1)

calculating the number of days the agency improperly denied access to records and (2)

determining the appropriate daily penalty, depending on the agency's actions."  *Cedar

Grove Composting*, *Inc. v. City of Marysville*, 188 Wn. App. 695, 724, 354 P.3d 249

(2015).  In this case, the trial court's calculation of the number of days the District denied

21

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

responsive records is based on a finding that Ms. Cantu's October request was for

incident reports and not all records of incidences. On de novo review, we agree with this

interpretation of Ms. Cantu's request.

The PRA requires agencies to produce "identifiable public records." RCW

42.56.080. If a request is too vague, an agency may request clarification. RCW

42.56.520. "While there is no official format for a valid [public disclosure act] PDA

request, a party seeking documents must, at a minimum, provide notice that the request is

made pursuant to the PDA and identify the documents with reasonable clarity to allow

the agency to locate them." *Hangartner v. City of Seattle*, 151 Wn.2d 439, 447, 90 P.3d

26 (2004) (citing *Wood v. Lowe*, 102 Wn. App. 872, 878, 10 P.3d 494 (2000)). Agencies

are not required to read minds. *Bonamy v. City of Seattle*, 92 Wn. App. 403, 409, 960

P.2d 447 (1998).

The trial court did not err in finding that Ms. Cantu's original request was for HIB

incident reports and the term "incidences/incident" modifies the request for reports.

There is no question that had Ms. Cantu simply requested "incident reports" that her

request would be for a specific type of public record. As the District points out, it is

statutorily required to address allegations of harassment, intimidation and bullying. *See*

RCW 28A.600.477. The District meets its requirement by creating and making available

to students and the public specific HIB reports. Thus, a request for incident reports

22

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

concerning harassment, intimidation and bullying of a named person would be a request for HIB reports concerning this person.

Ms. Cantu argues that her use of the "virgule" slash symbol created ambiguity. Under different circumstances, courts have interpreted the virgule to mean a disjunctive construction, indicating that the words may be used in the alternative. *See Mumma v. Rainier Nat'l Bank*, 60 Wn. App. 937, 940, 808 P.2d 767 (1991). Under this construction to Ms. Cantu's October 16 request, the trial court did not err in determining that Ms. Cantu was requesting certain types of reports about harassment, intimidation, or bullying involving her daughter. The terms "incidences" and "incidents" could still reasonably be construed to modify "reports."

Under a reasonable interpretation of Ms. Cantu's October 2016 search, the District was required to provide her with all reports of incidences or incidents where AM was a victim of bullying, threats, harassment, etc. from April 2016 to the date of the request.

C. ADEQUACY OF THE DISTRICT'S FEBRUARY 2017 SEARCH

Next, Ms. Cantu appeals the trial court's determination that the District's search for records responsive to Ms. Cantu's January 2017 records request was adequate. In January 2017, after a phone call with Ms. Fitterer, Ms. Cantu clarified that she wanted all email records discussing harassment, intimidation, and bullying incidences involving her daughter. Ms. Cantu also expanded the dates of her request through January 2017.

23

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

After this clarification, the District conducted another search for responsive records in February 2017. The District ran two searches of the District's email archives for the date range of April 1, 2016 through February 2, 2017. The search disclosed 85 emails records as potentially responsive. Ms. Cantu argues that the search was unreasonable and that an adequate search would have identified additional records. On January 14, 2019, after Ms. Cantu had filed her lawsuit, the District conducted another search with expanded parameters using "[A] OR" wildcards for the words threat, harass, bull, intimidate, [H] and "[A's nickname] and HIB," for the date range "4/1/2016-5/1/2018." This search produced additional records that were highly responsive to Ms. Cantu's January 2017 request for emails pertaining to the harassment, intimidation, and bullying of Ms. Cantu's daughter.

When public records are properly requested, the PRA requires an adequate search that is reasonably calculated to uncover all relevant records. RCW 42.56.070, .520; *Neighborhood All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 720, 261 P.3d 119 (2011). What is reasonable depends on the facts and circumstances of each case. *Id.* A search does not need to be perfect and the "failure to locate and produce a record is not a per se violation of the PRA." *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021) (published portion); *O'Dea*, No. 53613-7-II, slip op. at 24 (unpublished portion) https://www.courts.wa.gov/opinions/pdf/D2%2053613-7-II%20Published %20Opinion.pdfhttps://www.courts.wa.gov/opinions/pdf/D2%2053613-7-II %20Published

24

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

%20Opinion.pdf. Instead, an agency must follow leads and search sources that are likely to produce responsive records. *Neighborhood All.*, 172 Wn.2d at 720.

"The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents." *Id.* When the adequacy of a search is raised on summary judgment our Supreme Court has held that "the agency bears the burden, beyond material doubt, of showing its search was adequate." *Id.* at 721. In attempting to meet its burden, the agency may submit reasonably detailed, nonconclusory affidavits prepared in good faith that include the search terms, the type of search performed and the locations searched. *Id.* The court's focus should be on the adequacy of the search, not on whether responsive records exist. *Id.* at 719-20. A search may be adequate and still fail to identify responsive records. *See West v. City of Tacoma*, 12 Wn. App. 2d 45, 79, 456 P.3d 894 (2020) ("The mere fact that a record is eventually found does not itself establish the inadequacy of an agency's search.").

As the Supreme Court has noted, "records are never exempt from disclosure, only production, so an adequate search is required in order to properly disclose responsive documents." *Neighborhood All.*, 172 Wn.2d at 721. Thus, the failure to perform an adequate search is tantamount to a denial of the request. *Id.* While the court has not determined if an inadequate search is grounds for an independent penalty, if an inadequate search fails to discover responsive records, the records have been wrongfully denied and a per diem penalty is appropriate. In addition, an inadequate search is an

25

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

aggravating factor in determining the penalty for records not produced, and constitutes a

violation of the PRA for purposes of imposing costs and attorney fees. *Id*. at 724.

Ms. Cantu's October 2016 request reads as follows "Description of records

requested: All incidences/incident reports where [A] was a victim of bullying, threats,

harassment, etc. Dates: April 2016-present." In January, Ms. Cantu clarified that she also

wanted emails and extended the search period through January 30. On January 30, 2017,

the District's public records officer sent the District technology department director an

email requesting he perform a search for emails and attached a copy of Ms. Cantu's

October 2016 written request with the date modified to January 30, 2017. On February 2,

2017, the District's technology services director ran two searches of the District email

archive system for the date range of April 1, 2016 through February 2, 2017 using the

following search terms:

- [A] AND bullying OR HIB
- [A] AND harassment OR intimidation OR bullying
- [A] AND [M]

CP at 538-39.

Because the District's system requires very specific search terms or intentional use

of wildcards,[7] the above searches would not pick up individual terms, misspellings, any

---

[7] A "wildcard" is a search technique that can be used to maximize database search results by using an asterisk (*) to specify zero, or one, or more than one other character. *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/wild %20card (last visited Jul. 25, 2022).

26

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

shortened version of the student's name, the student's initials, or student ID number. Nor would the searches capture alternate suffixes for the searched terms such as "bully" or "bullied." *Id*. The search did not include the term "threat," even though that term was used in the records request. The search identified 85 email records as potentially responsive which the technology director provided to Ms. Fitterer. Had the search included the term "threat" or used wildcards in its search, a few more records would possibly have been discovered. CP at 2997.

We review the search as a whole to determine if it was reasonably calculated to produce responsive records. *West*, 12 Wn. App. 2d at 79. We focus on the search conducted, not on whether the requester can think of alternative search terms that may produce more records. *Id*. Nonetheless, a search that is unnecessarily narrower than a request is generally not adequate. *Id*. In *West*, the court found that the city attorney's interpretation of the records request unreasonably narrowed the search. Because the attorney interpreted the request to be for records, he did not search communications, even though a record is any writing and a writing includes emails. *Id*. at 81. Moreover, the attorney's interpretation of the records request was narrower than the actual wording of the request, thus amounting to an inadequate search. *Id*. at 81-82.

In this case, the technology director provided a declaration stating that he reviewed Cantu's October records request and considered the search terms calculated to

27

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

return all the records responsive to the request.[8]  The technology director did not explain

why he did not include the term "threat" in his search.  Instead, he justified his search by

focusing on the outcome; pointing out that including the term would have only produced

one additional record.  Nor did the technology director explain why he did not use

wildcards when conducting the initial searches.

The District contends that its search as a whole was reasonable and is not

dependent on alternative search terms suggested by Ms. Cantu such as "threat."  In *Hobbs*

*v. State*, the plaintiff complained that the State had not searched for particular terms

included in his request, or other terms he subsequently suggested.  183 Wn. App. 925,

943, 335 P.3d 1004 (2014).  The Court of Appeals affirmed the adequacy of the search

clarifying that "we inquire into the scope of the agency's search as a whole and whether

that search was reasonable, not whether the requestor has presented alternatives that he

believes would have more accurately produced the records he requested."  *Id*. at 944.

This case is more analogous to *West* than *Hobbs*.  Ms. Cantu's request specifically

asked for emails of incident reports where her daughter was the victim of threats.  The

term "threat" is not an alternative search term suggested during litigation; it is a specific

part of Cantu's records request.  More importantly, the District's failure without

---

[8] While Ms. Cantu criticized his failure to use a wildcard on her daughter's name, there was no way for the director to know that the daughter had a nickname or used a shortened version of her name.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

explanation, to use wildcards when it is known that they are necessary to locate

alternative word forms also unreasonably restricted the District's search. In *West*, the

court found that the city failed to prove beyond a reasonable doubt that its search was

reasonable when its interpretation of the records request was narrower than the language

of the request. *West*, 12 Wn. App. 2d at 81.

We conclude that the District's search in February 2017 was inadequate to

reasonably produce responsive records to Ms. Cantu's request. On remand, the court will

need to determine which records would have been produced using a reasonable search

and set a penalty for the late disclosure of those records. The court shall also consider the

inadequate search as an aggravating factor in determining the daily penalty amount.

D. WHETHER A DELAYED RESPONSE CAN AMOUNT TO A DENIAL

The next issue we address is whether the District's delay in responding to one of

Ms. Cantu's April 2018 records requests amounted to a constructive denial of records.

On April 5, 2018, 18 months after her first records request, Ms. Cantu submitted

another request for "All emails including the text of the messages Re: [AM] from April

2016 to present." The District requested clarification but did not provide a formal five-

day response. After further clarification, the District estimated it would be able to

respond by July 16. On June 8, the District emailed Ms. Cantu's attorney and indicated

that it was "suspending" all outstanding response deadlines and postponing its response

to evaluate how to respond to multiple records requests. The District did not provide

29

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

records by its July 16 estimated deadline and did not provide any meaningful

communication to Ms. Cantu until the end of August when the District's PRA officer

misrepresented that the District's public records office had been closed for the summer.

On September 13, the District emailed Ms. Cantu a web link to an empty Google

directory. On September 24, 172 days after submitting her request, Ms. Cantu filed her

complaint against the District, claiming that her April 5 records request had been

effectively denied.

The superior court dismissed Ms. Cantu's claim for denied records on summary

judgment. The court found that Ms. Cantu's April 2018 request was neither denied nor

completely ignored. Report of Proceedings (July 10, 2020) (RP) at 13-14; CP at 3408.

Specifically, the court found:

> In this case Ms. Fitterer has established that the plaintiff's request
> was never completely ignored. There may have been delays. There was
> certainly times when she was overwhelmed with other requests and so on.
> But there is really nothing from which I can find that the request was ever
> completely ignored. And, again, the term completely ignored seems like a
> fairly high bar that any plaintiff is going to have to get over. It's not a
> matter of you set it on a desk maybe and leave it for three days and go to do
> something else and then come back to it and even wait a week and come
> back to it. If the intent was to always come back to it, then you haven't
> completely ignored it. And there's no evidence that Ms. Fitterer or anyone
> else in the school District ever completely ignored it.

RP at 13-14. The court also found that any violation was cured by the District's eventual

production of the records requested. We review this decision de novo. RCW 42.56.550(3);

*Neighborhood All.*, 172 Wn.2d at 715.

30

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

As more fully explained below, we hold that an agency's inaction, or lack of

diligence in providing a prompt response to a records request can ripen into constructive

denial for purposes of fees, costs, and penalties under the PRA. We also hold that

whether a constructive denial has occurred is based on an objective standard from the

requesters' perspective and will depend on the circumstances of each case. Finally, we

conclude that whether an agency was reasonably diligent in responding to a records

request or ignored a request for an extended period of time is a factual issue.

In this case, while the court decided this issue on summary judgment, it also made

oral findings of fact to support its decision. Because disputed issues of fact in a PRA

case can be decided on competing affidavits, and the evidence was fully presented in this

case, we exercise our discretion to decide this factual question, sitting in the same

position as the trial court.

*(1) Agency's inaction can ripen into the constructive denial of records*

Upon a request for identifiable public records, an agency shall make them

"promptly available." RCW 42.56.080(2). Under the PRA, an agency must provide "the

fullest assistance to inquirers and the most timely possible action on requests for

information." RCW 42.56.100. When a records request is received, the agency must

respond within five business days either by (1) providing the records, (2) providing a link

to the records requested, (3) providing a reasonable estimate of the time it will take to

respond, (4) ask for clarification along with an estimated time to respond, or (5) deny the

31

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

request. RCW 42.56.520(1). Under RCW 42.56.080, an agency may produce records in installments.

The District contends that a lawsuit claiming denial of records under RCW 42.56.550(1), cannot be brought until the agency has denied and closed a records request. Br. of Resp't at 39-40. Citing *Freedom Foundation v. Department of Social & Health Services*, 9 Wn. App. 2d 654, 664, 445 P.3d 971 (2019), as its authority, the District implies that a "denial" requires an affirmative step by the agency. We disagree.

In *Hobbs*, the plaintiff made a request to the Department of Social and Health Services (DSHS) for records regarding a whistleblower complaint. 183 Wn. App. at 925. DSHS responded within five days indicating that it would provide the records in installments, with the first expected installment to be available for inspection within two weeks of the request. When DSHS was unable to reach the plaintiff's attorney, the agency made the first installment of records available electronically. Two days after the first installment of records was provided, Hobbs filed suit against DSHS alleging PRA violations. *Id*. at 930 n.3. Despite the lawsuit, DSHS continued to provide records in installments over the next several months. Over the course of approximately three months, DSHS sent 10 emails with records, estimated time lines and requests for clarification. *Id*. at 925.

The superior court ruled that the redactions complied with the PRA and that Hobbs did not have a cause of action for denial of records because DSHS was still

32

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

providing records in installments when he filed his lawsuit. *Id*. at 932. On appeal, the

*Hobbs* court held that a claim for denial of an opportunity to inspect or copy under RCW

42.56.550(1) does not accrue until there is "some agency action, *or inaction*, indicating

that the agency will not be providing responsive records." *Id*. at 936 (emphasis added).[9]

While the term "denial" is not defined within the PRA, the court held that "a denial of

public records occurs when it reasonably appears that an agency will not or will no longer

provide responsive records." *Hobbs*, 183 Wn. App. at 936.

The *Hobbs* court noted that there was "no dispute" that DSHS was continuing to

provide Hobbs with responsive records when he filed his lawsuit. *Id*. Because the

agency was diligently making reasonable efforts to comply with the records request,

Hobbs could not show a violation of the PRA. *Id*. at 940-41. The *Hobbs* court noted

specifically, however, that it was not addressing "the situation where an agency

completely ignores a records request for 'an extended period.'" *Id*. at 937 n.6. At least

one scholar has suggested that "If an agency has failed to produce records for an

extended period after missing an estimated deadline, the requester may treat the agency's

_____

[9] In *Freedom Foundation* the court took it one step further and declared that "If an agency has not yet produced the requested records but has not stated that it will refuse to produce them, the agency has not denied access to the records for purposes of judicial review." *Freedom Found.*, 9 Wn. App. 2d at 664 (citing *Hobbs*, 183 Wn. App. at 936-37). We decline to follow this narrower reading of RCW 42.56.550(1) in part because this statement in *Freedom* was dicta; the plaintiff was not claiming denial of records under RCW 42.56.550(1).

33

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

silence as a denial and file suit." WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT

DESKBOOK: § 16.2, at SU-16-2 (2d. ed 2014 & Supp. 2020) (citing *Hobbs*, 183 Wn. App.

at 936 & n.6). A fair reading of *Hobbs* does not support the District's position that an

agency must affirmatively deny a request before a cause of action for wrongful denial

accrues. *See also* WAC 44-14-04004(4)[10] ("A 'denial' of a request can occur when an

agency . . . [w]ithout justification, fails to provide the record after the reasonable estimate

of time to respond expires.").

Contrary to the District's position, we have previously held that a requester is a

prevailing party under the PRA if "suit was reasonably necessary to obtain the records

requested and caused the release of the records." *Violante v. King County Fire Dist. No.

20*, 114 Wn. App. 565, 567, 59 P.3d 109 (2002). In *Violante*, the plaintiffs made several

requests for the fire district's budget. A fourth request was submitted on May 25. When

the fire district failed to respond to this request, the plaintiff filed its lawsuit on June 21.

The fire district ultimately provided the records on August 3. After the trial court denied

costs and penalties, the plaintiff appealed. The issue on appeal was whether the lawsuit

was necessary to cause the release of the records. The fire district argued that it had a

---

[10] The model rules in chapter 44-14 WAC are advisory, but the legislature has instructed agencies to consult the model rules when establishing local ordinances for PRA compliance. RCW 42.56.570(4).

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

history of prompt responses to other requests and at no time denied the plaintiff's request

for documents.

After considering the undisputed facts from the point of view of the requesting

party, the court held that the lawsuit was necessary to produce the records and the

plaintiff was entitled to costs and penalties. *Id*. at 571.  Specifically, the court noted:

> [A]fter four attempts to obtain the same information, the likelihood of
> inadvertent agency error was obviously low, the likelihood of a timely
> response was obviously nil, and there was nothing to indicate the
> Association's request would ever be honored.  Viewed objectively from the
> Association's point of view, this lawsuit was reasonably regarded as
> necessary.

*Id*.

Here, the District acknowledges *Violante* in its brief, but fails to analyze or

distinguish its relevant holding.  Instead, the District supports its position by arguing that

under the PRA, there are only two causes of action as set forth in RCW 42.56.550.

According to the District, a claim for denial of records under RCW 42.56.550(1) requires

final action by the agency.  But a cause of action for failing to make a reasonable estimate

of time to comply under RCW 42.56.550(2) does not require a final action.  Since the

District did not affirmatively deny Ms. Cantu's April 2018 request for emails, the District

claims that her only option was to seek a show cause hearing for failing to provide a

reasonable estimate under RCW 42.56.550(2).

35

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

This logic fails for several reasons. First, the District's limited reading of the PRA has been previously rejected in *Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d 89, 104, 117 P.3d 1117 (2005). In *Spokane Research*, the city argued that the requester's "failure to obtain a show cause order eliminated his entitlement to fees and penalties." *Id*. at 104. The Supreme Court disagreed, noting that a show cause hearing is discretionary, not mandatory. *Id*. at 106. On the other hand, fees, costs, and penalties are awarded for "any action in the courts." RCW 42.56.550(4). The language allows for any kind of civil action. *See Asotin County v. Eggleston*, 7 Wn. App. 2d 143, 150, 432 P.3d 1235 (2019) (requester was prevailing party entitled to attorney fees even though he did not commence the lawsuit).

In addition, the District's narrow interpretation of the PRA would flip the purpose of the chapter on its head. Under the District's interpretation, an agency could avoid liability for denying records by doing nothing. In this case, by mid-September there was no estimate of time to challenge as unreasonable. The only estimate given was for July 16, two months prior. There had been no effective communication from the District and no new estimated time for responding. The District's position is not a liberal interpretation of the PRA and does not promote the purpose of full disclosure.

The District also argues that allowing Ms. Cantu to pursue a claim for constructive denial is "unworkable." Br. of Resp't at 41. The District contends that in order to resolve such a claim the court would have to make determinations on how an agency was

36

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

allocating resources and determine what a reasonable response time would be. We reject

this argument because it would give agencies too much autonomy in deciding how and

when to respond to a records request. We note that had Ms. Cantu sought a show cause

hearing under RCW 42.56.550(2), the District would need to prove that its response time

was reasonable under the same framework it now claims is unworkable.

The issue is not whether the District missed its self-imposed estimate for

responding to the records request. The issue is whether the District can show that it was

working diligently to promptly provide the records requested.

### *(2) Factual findings on diligent efforts*

Having decided the legal issue, we consider its application to this case. Whether

an agency's lack of diligence amounts to a constructive denial is a question of fact. *See*

*Freedom Found.*, 9 Wn. App. 2d at 673 ("Whether the agency responded with reasonable

thoroughness and diligence is a fact-specific inquiry."). The trial court decided this

factual issue on summary judgment. As we noted above, PRA hearings are unique

because evidentiary hearings may be conducted on affidavits. Although these hearings

may appear like a motion for summary judgment, evidentiary hearings require findings of

fact and conclusions of law. In this case, the superior court made findings as part of its

oral decision. As the reviewing court, we are not bound by these findings. *PAWS* II, 125

Wn.2d at 252-53. Instead, we review the evidence from "'the same position as the trial

court.'" *Id.* at 252 (quoting *Smith v. Skagit County*, 75 Wn.2d at 718).

37

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

In determining whether the District was diligently working on Ms. Cantu's request, we apply an objective standard from the viewpoint of the requester. *Violante*, 114 Wn. App. at 571. This means taking into account prior requests by the plaintiff and communication between the requester and the agency. *Id.* at 569. We consider the totality of circumstances to determine if the District was providing "the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.56.100.

After considering the evidence, we determine that the District was not diligently working on Ms. Cantu's records requests and the District's lack of diligence amounted to a denial of Ms. Cantu's April 2018 request. Initially, the District failed to respond to Ms. Cantu's April 2018 request within five days. When it did respond, it provided nine HIB reports and indicated an estimated response time of July 16. Not only did the District miss its estimated compliance date of July 16, but it provided no communication between July 9 and August 23, despite inquiry from Ms. Cantu. When the District did finally respond, it provided false information that the public records office was closed for the summer. The next communication was an email with a link to an empty Google directory. By this time, five months had passed from the last record provided. Ms. Cantu's emails had been ignored and there were no estimates given about when the District would produce the records.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

The District argues that it was simultaneously responding to "numerous large public records requests," even if it was not "making significant progress" on Ms. Cantu's request. Br. of Resp't at 43. This argument fails for two reasons. First, administrative inconvenience or difficulty in producing records does not excuse lack of diligence. *Zink I*, 140 Wn. App. at 337 (citing *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 131-32, 580 P.2d 246 (1978); RCW 42.56.550(3)). Second, the District's own evidence suggests that the delay in responding to Ms. Cantu's request was not due to overwhelming requests, but rather insufficient allocation of resources and lack of priorities.

In her declaration, Ms. Fitterer avers that the District had received two other large records requests during the same time period as Ms. Cantu's April 2018 request.[11] However, she also acknowledges that she was "extremely busy with a new pilot program . . . [that] ended up consuming much of my summer." CP at 578. While Ms. Fitterer admits receiving 3,200 emails on July 2, 2018, that were potentially responsive to Ms. Cantu's request, she did not perform any work on Ms. Cantu's request until September or October. CP at 578-79. Ms. Fitterer indicated that she spent "some" of her summer working on the other two requests, but she acknowledged that her ability to focus on records requests was "limited due to other essential duties of my position. I was

_____

[11] Ms. Fitterer states that she was responding to more than 40 public records requests between April 2018 and May 2019, but the majority of these requests were received after Ms. Cantu's request.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

particularly busy during July coordinating the training of staff, coordinating excursions, and arranging housing in connection with the pilot program to bring 30 Chinese middle school students to Yakima for two weeks." CP at 578. During this time, the District declined Ms. Fitterer's numerous requests for assistance, claiming lack of available resources despite a significant contingency fund. The District's new in-house counsel was able to clear the request backlog and process an additional 110 requests by September, 2020.

In *Andrews v. Washington State Patrol*, 183 Wn. App. 644, 334 P.3d 94 (2014), we held that an agency would not be held strictly liable for missing its own self-imposed deadline when it was diligently working to respond to the plaintiff's records request. Notably, in *Andrews*, the Washington State Patrol (WSP) properly responded to the plaintiff's request and initially estimated it would provide a response in 20 days despite addressing over 2000 other requests. *Id*. at 647. Shortly after this deadline passed, the Patrol emailed the requester again, indicating it would take another 20 days to collect the records, notify involved parties, and redact exempt portions. Two days after the second deadline (approximately 60 days after the request was made), the requester filed a complaint alleging PRA violations. We noted that the PRA does not require an agency to strictly comply with its estimated time of production. *Id*. at 651. The WSP needed to extend its deadlines because it had underestimated the amount of responsive records and the need for redaction. While working diligently to respond, the WSP missed its second

40

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

deadline without sending another extension letter. We affirmed dismissal of the

plaintiff's action because the "uncontested facts" established that the WSP was acting

diligently to respond to the request.

Unlike *Andrews*, the District was not working diligently to respond to Ms. Cantu's

request. And despite claiming that it was overwhelmed with requests that were received

after Ms. Cantu's request, it does not appear that the District was diligently working on

any of them. We conclude that as of July 16, 2018, it reasonably appeared from Ms.

Cantu's perspective that the District would not provide responsive records. *Hobbs*, 183

Wn. App. at 936.

*(3) Producing records after a constructive denial does not cure the violation*

Relying on *Hobbs*, the trial court also held that the District's eventual production

of records in response to Ms. Cantu's lawsuit cured any violations. In *Hobbs*, after

determining that a denial was a prerequisite to claiming a violation of the PRA under

RCW 42.56.550(1), the court acknowledged, "that agencies can cure PRA violations by

voluntarily remedying the alleged problem while the records request is open and the

agency is actively working to respond to it." *Id*. at 939. "When an agency diligently

makes every reasonable effort to comply with a requester's public records request, and

the agency has fully remedied any alleged violation of the PRA at the time the requester

has a cause of action (i.e., when the agency has taken final action and denied the

41

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

requested records), there is no violation entitling the requester to penalties or fees." *Id.* at 940-41.

This holding does not apply in situations when the agency is not diligently making reasonable efforts to comply with a records request. In other words, if the District's inaction amounted to a constructive denial before it eventually provided records, then the court should find a violation and consider a per diem penalty. "[T]he remedial provisions of the PRA are triggered when an agency fails to properly disclose and produce records, and any intervening disclosure serves only to stop the clock on daily penalties, rather than to eviscerate the remedial provisions altogether." *Neighborhood All.*, 172 Wn.2d at 727.

On remand, the superior court will need to calculate the number of days responsive records were withheld after July 16, 2018, and assess a per diem penalty for the wrongful withholding of those records.

E.  INTERPRETATION OF MS. CANTU'S APRIL 2018 REQUEST AND THE 75 EMAIL ATTACHMENTS

The next issue we address is whether 75 email attachments identified by the District but not produced were responsive to Ms. Cantu's April 2018 request and otherwise nonexempt.

Ms. Cantu's April 2018 records request asked for all emails regarding her daughter from April 2016 to April 2018 without qualification. Ms. Fitterer followed up, requesting clarification because she thought she had previously provided this

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

information.  Ms. Cantu responded: "I did request copies of my emails in the past, however they did not contain any messages. . . .  I would like ALL emails with the messages."  "Also, a lot more incidences have occurred since my last request, therefore I am in need of past emails to the present."  "Please contact me if you need further clarification on my request."  CP at 441.

On October 13, 2018, after Ms. Cantu had filed her lawsuit against the District, Ms. Fitterer provided Ms. Cantu with a thumb drive containing the text of 398 emails. The thumb drive did not contain any of the email attachments, nor did it contain a redaction and exemption log.  The District included a letter indicating that it considered its response complete.

On January 10, 2019, the District provided Ms. Cantu with an exemption log for 75 attachments to emails provided the previous October.  The log cited the FERPA for personally identifiable information as the same explanation for withholding all 75 attachments.  The email attachments contain large spreadsheets of student data.  The District concedes that these spreadsheets likely contain Ms. Cantu's daughter's name, but contend that the bulk of the spreadsheets are exempt and the spreadsheets themselves are nonresponsive because they do not pertain to harassment, intimidation, or bullying.

In December 2019, the superior court considered the District's motion for declaratory relief, and found that the 75 emails (already provided) along with their attachments were not responsive to Ms. Cantu's April 2018 request.  Based in part on Ms.

43

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

Cantu's initial clarification to Ms. Fitterer, the trial court determined that "it was reasonable for the school District to assume that Ms. Cantu was referring to emails regarding incidents where her daughter was a victim of bullying, threats, and harassment." CP at 3418. Since the attachments did not pertain to HIB reports, the court determined the attachments were not responsive. Alternatively, the court held that even if the email attachments were responsive, they were exempt in their entirety under FERPA.

Ms. Cantu appeals the denial of these records. On appeal, the parties do not dispute that FERPA provides a valid exemption to withhold the records of other students. Instead, the dispute over the 75 email attachments centers on whether the spreadsheets fall within the scope of Ms. Cantu's April records requests and if so, whether they can be provided in redacted format.

We review de novo the District's actions under the PRA. RCW 42.56.550(3). The District's declaratory motion was an evidentiary motion heard solely on affidavits. For purposes of a PRA action, we stand in the same shoes as the superior court and consider the factual determinations de novo. *PAWS* II, 125 Wn.2d at 252-53.

We set forth above the requirements for a valid PRA request. Generally, a request for public records must be for an identifiable public record. RCW 42.56.080(1). Upon the request for an identifiable public record, the agency shall make it promptly available.

44

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

RCW 42.56.080(2). "Agencies shall not deny a request for identifiable public records solely on the basis that the request is overbroad." *Id.*

Ms. Cantu requested all emails regarding her daughter. The request was not qualified nor ambiguous. Given the strong presumption in favor of full disclosure, an agency should not unreasonably assume a narrow interpretation of a request. *See Zink* I, 140 Wn. App. at 337. After applying a broad interpretation, if any ambiguity remains, it is incumbent upon the District to clarify that ambiguity. *See West*, 12 Wn. App. 2d at 81 (City's unreasonable interpretation of request was narrower than the clear language of the request).

In this case, the District and the trial court applied a narrow interpretation to Ms. Cantu's request by assuming she meant to limit the request based on prior requests. This is an unreasonable assumption and an unreasonable interpretation of the request. All means all. The 75 email attachments are responsive to Ms. Cantu's request if they pertain in any way to her daughter.

Unsurprisingly, the District itself did not read Ms. Cantu's request in this limited manner until after it realized the extent of responsive documents. When the District finally started responding to Ms. Cantu's April request, it provided her with 398 emails but did not include the email attachments and did not include an exemption log or explanation for withholding the attachments. Several months later, the District provided an exemption log, claiming that the attachments were exempt in their entirety. It was

45

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

only after the emails were provided, that the District claimed the emails and attachments were nonresponsive.

The District also claims that even if the email attachments are responsive, they are exempt in their entirety under FERPA. Where identified documents are withheld, "the burden rests with the agency claiming exemption to prove the propriety of nondisclosure to the trial court on a document-by-document basis." *Sargent v. Seattle Police Dept.*, 179 Wn.2d 376, 388, 314 P.3d 1093 (2013) (citing *Cowles Publ'g Co. v. Spokane Police Dep't*, 139 Wn.2d 472, 479-80, 987 P.2d 620 (1999)). "Exemptions under the Public Records Act should be construed narrowly." *PAWS* II, 125 Wn.2d at 260 (citing former RCW 42.17.010(11)). Withholding or redacting a nonexempt document violates the PRA. *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010); RCW 42.56.210(3). Portions of records that are not exempt must be produced. RCW 42.56.210(1). "In general, the [PRA] does not allow withholding of records in their entirety" where a redaction can be done. *PAWS* II, 125 Wn.2d at 261. An otherwise exempt record can be transformed by redaction into a record that must be disclosed. *Resident Action Council v. Seattle Hous. Authority*, 177 Wn.2d 417, 434, 327 P.3d 600 (2013).

Exemptions are established within the PRA itself and within other laws. *West v. TESC Bd. of* Trust., 3 Wn. App. 2d 112, 118, 414 P.3d 614 (2018). FERPA qualifies as one of these other laws because it exempts student education records like those redacted and withheld by the District. *Id*. at 119.

46

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

The District's claimed exemption is unreasonable. Electronic media files can be searched. They can also be redacted. If a spreadsheet contains thousands of names on hundreds of pages, then the names of other students are exempt under FERPA. But the remainder of the attachments must be provided whether those be single lines or pages that include the nonexempt requested information.

On remand, the court will need to determine how many of the email attachments' pages pertain to Ms. Cantu's daughter, determine when they should have been produced, calculate the number of days that they were wrongfully withheld, and consider the per diem penalty for wrongfully withholding these records.

F. DAILY PENALTY

The final issue we address is whether the trial court abused its discretion when setting the daily penalty for the District's violation of the PRA where it found that there were no *Yousoufian* aggravating factors.

In response to Ms. Cantu's January 2017 clarification, the District identified 85 responsive emails. The District's technology director sent these emails to Ms. Fitterer for review in the form of a link to PST files on the District's network along with instructions on how to open PST files. Ms. Fitterer could not open the files except to view the "headers," which identify the "Sender," "Recipient," "Message-Id," and "Subject,", but not the content. Instead of asking for help, Ms. Fitterer provided the email headers to Ms.

47

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

Cantu in hard copy form without the email contents. Ms. Fitterer assumed that Ms. Cantu

would identify the emails she did not already have based on the headers and request those

specific emails. When she did not hear from Ms. Cantu, Ms. Fitterer assumed that Ms.

Cantu was satisfied with the headers produced.

The District concedes that it failed to produce the 85 emails for 631 days. The

court grouped the 85 emails into one record for purposes of setting the per diem penalty,

found no aggravating factors, and set the per diem penalty at $10 per day for a total

penalty of $6,310. Ms. Cantu appeals this penalty raising several issues. She argues that

the trial court's analysis of the *Yousoufian* mitigating and aggravating factors was not

supported by the record. She also contends that the court erred by grouping the emails

into one record. Ultimately, Ms. Cantu argues that the per diem penalty of $10 per day

was an abuse of discretion.

We review penalty assessments under the PRA for abuse of discretion. *Hoffman*

*v. Kittitas County*, 194 Wn.2d 217, 224, 228, 449 P.3d 277 (2019). While a party who

demonstrates a PRA violation is entitled to costs and attorney fees, the decision to impose

a penalty, and the amount of the penalty are within the trial court's considerable

discretion.[12] *Id.* The *Yousoufian* factors were articulated to help guide trial courts in

---

[12] In 2011, the legislature amended RCW 42.56.550(4) and eliminated the mandatory minimum penalty, rendering the penalty discretionary in certain circumstances. *See* LAWS OF 2011, ch. 273, § 1 (effective July 22, 2011).

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

exercising their discretion, and provide a meaningful framework for appellate review. *Id.*

at 225. But the factors are for guidance; they are not exclusive, they may overlap and

they may or may not be important under the circumstances of individual cases. *Id.*

In asking us to review each individual factor, Ms. Cantu argues that we should

apply a de novo standard of review to the trial court's factual findings and an abuse of

discretion standard to the application of these findings to the *Yousoufian* factors. Br. of

Appellant at 29. The Supreme Court rejected this standard of review in *Hoffman*.

> Articulating the basis for a penalty award in terms of the *Yousoufian* II
> framework helps trial courts spell out their reasoning in a way that
> facilitates meaningful appellate review. [*Yousoufian v. Office of Ron Sims*,
> 168 Wn.2d 444, 468, 229 P.3d 735 (2010)]. But appellate review is
> undertaken using an abuse of discretion standard—not by engaging in
> piecemeal de novo review of individual *Yousoufian* II factors.

*Hoffman*, 194 Wn.2d at 228. Instead, a reviewing court should consider a more holistic

review of the overall penalty to determine whether a trial court's assessment was

adequate in light of the totality of the circumstances. *Id.* As a reviewing court, our

function is not to exercise discretion, but rather to determine if the trial court abused its

discretion when determining the penalty.[13] *Id.* at 227.

As noted above, the Supreme Court has promulgated seven mitigating factors and

nine aggravating factors to help trial courts exercise their discretion and help provide

---

[13] Having concluded that our review of the penalty is more holistic, we decline to
separately analyze each mitigating and aggravating factor such as whether the trial court
erred in determining that the 85 emails constitute one record.

49

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

meaningful review by appellate courts. *Yousoufian* II, 168 Wn.2d at 467-68. We set

forth these factors here for guidance; not as a checklist. The mitigating factors are:

(1) a lack of clarity in the PRA request,

(2) the agency's prompt response or legitimate follow-up inquiry for clarification,

(3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions,

(4) proper training and supervision of the agency's personnel,

(5) the reasonableness of any explanation for noncompliance by the agency,

(6) the helpfulness of the agency to the requestor, and

(7) the existence of agency systems to track and retrieve public records.

*Id*. at 467 (footnotes omitted). The aggravating factors are:

(1) a delayed response by the agency, especially in circumstances making time of the essence,

(2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions,

(3) lack of proper training and supervision of the agency's personnel,

(4) unreasonableness of any explanation for noncompliance by the agency,

(5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency,

(6) agency dishonesty,

(7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency,

(8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency, and

50

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

> (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

*Id*. at 467-68 (footnotes omitted).

Being nonexclusive, not all factors apply equally and no single factor controls. *Id.* at 468. Ultimately, overall agency culpability is the focus of the penalty determination due to an overarching concern for deterrence. *Id.* at 460, 462-63. "An agency that sought clarification of a confusing request and in all respects timely complied but mistakenly overlooked a responsive document should be sanctioned less severely than an agency that intentionally withheld known records and then lied in its response to avoid embarrassment." *Neighborhood All.*, 172 Wn.2d at 718.

In this case, the trial court imposed a penalty of $10 per day after finding several mitigating factors and no aggravating factors. Ms. Cantu argues that in light of the record, the trial court abused its discretion by setting such a low daily penalty amount. She contends that contrary to the trial court's assessment, almost every one of the aggravating factors existed in this case, thus supporting a higher penalty.

The District contends that the penalty was not an abuse of discretion. The District points out that Ms. Fitterer did receive some training when she was hired. The District also argues that Ms. Cantu did not demonstrate any harm, pointing to the trial court finding that she "did not suffer any actual personal economic loss as a result of the PRA

51

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

violation." CP at 3402. Finally, the District argues that deterrence is no longer a factor since the District has already changed the manner in which it processes PRA requests.

We hold that the penalty in this case was inadequate in light of the circumstances and constitutes a manifest abuse of discretion. The District's failure to produce records for 631 days was based on conduct that amounts to gross negligence.

Yakima School District No. 7 is the 15th largest school District in Washington State. The District's operating budget for 2017-2018 exceeded $200 million with a $20 million budget surplus which was consistent year after year. The District employs close to 2,000 people and educates approximately 16,000 students. Given this size, Yakima School District should be allocating sufficient resources to respond to public records requests. Instead, the District failed to train its personnel, failed to provide adequate staffing, and failed to make public records requests a priority.

Initially, the District did not provide a five-day response to the October 2016 request or provide any records for almost three months. There is no explanation for the initial three month delay in producing records other than the PRA officer "dropped the ball." In response to Ms. Cantu's January amendment, the District provided a five-day response letter on February 3, 2017, with a production time estimated. Otherwise, the District simply handed her hard copies of headers of the 85 emails and assumed Ms. Cantu would narrow her previous request. While this may not have been an intentional

52

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

attempt to conceal, the response demonstrates a complete lack of understanding or disregard of the District's obligation under the PRA.

The District's culpability for failing to comply with the PRA is clear. The PRA officer's failure to follow proper procedure and give the records request its due priority was most likely caused by lack of experience, training, and support. Ms. Fitterer assumed all duties as the District PRA officer in the summer of 2016. Her training consisted of a few online resources and a 45 minute training course. The technology director and staff were likewise not provided with adequate training. As we noted above, the search for emails only used two search queries, no wildcard symbols, and did not include all the terms in Ms. Cantu's request, thereby unreasonably narrowing the search. The District's new in-house counsel opined that better training may have avoided the situation entirely. Ms. Fitterer requested help from supervisors more than 10 times and the District declined to provide assistance claiming lack of available resources despite a budget surplus.

The District's response to Ms. Cantu's request failed to meet the letter and spirit of the PRA. The District failed to communicate for long periods of time despite acknowledging that it owed Ms. Cantu an explanation. The District engaged in unnecessary clarifications and unreasonable justifications to further delay its response, and failed to initiate searches for long periods of time without explanation. During the summer of 2018, when two of Ms. Cantu's requests remained pending, the District

53

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

claimed that reviewing large volumes of documents was too burdensome and

misrepresented that the office was closed for the summer.

In considering the *Yousoufian* factors, the trial court determined that there was no

need for deterrence because the District had recently changed its PRA procedures. We

disagree that deterrence is no longer an issue. While the District assured the trial court

that its policies had changed, the policies could just as easily revert if there is little

incentive to comply. Moreover, the District acknowledged that its policies changed to

comply with the law, which it should have been doing from the beginning. The District

is a large state agency. With great power, comes great responsibility. Yet, instead of

setting the standard for PRA requests, the District's failure to allocate sufficient resources

suggests that it considered PRA requests a low priority. Given the totality of these

circumstances, the penalty imposed was disproportionately low to the grave misconduct

and was manifestly unreasonable. *See Yousoufian* II, 168 Wn.2d at 463; *O'Dea*, 19 Wn.

App. 2d at 84.

G.  ATTORNEY FEES ON APPEAL

Ms. Cantu seeks attorney fees on appeal as the prevailing party under RCW

42.56.550(4). The District responds that since Ms. Cantu failed to improve her position

in superior court after the District's CR 68 offer of judgment, Ms. Cantu "must bear her

own costs of litigating this lawsuit." Br. of Resp't at 49. The District argues that even if

54

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

Ms. Cantu prevails on some of her issues on appeal, her entitlement to attorney fees

cannot be determined until a final penalty award is entered. *Id*.

The District's argument conflates costs with attorney fees. Under CR 68, when a

plaintiff rejects an offer of judgment, the plaintiff must pay the costs incurred after the

making of the offer if the final judgment is not more favorable than the offer. "Costs" do

not include attorney fees unless the statute or agreement provide otherwise. *Magnussen*

*v. Tawney*, 109 Wn. App. 272, 275, 34 P.3d 899 (2001). Offers of judgment under CR 68

apply in actions to enforce the PRA. *Rufin v. City of Seattle*, 199 Wn. App. 348, 363, 398

P.3d 1237 (2017). While the PRA defines costs to include attorney fees, it only allows

costs (and fees) to be awarded to a person prevailing against an agency. RCW

42.56.550(4).

Ms. Cantu has prevailed on four of the five issues she raised on appeal. Under

RCW 42.56.550(4), she is entitled to a portion of her reasonable attorney fees incurred

pursuing this appeal. *See Sanders*, 169 Wn.2d at 869-70; RAP 18.1(d).

CONCLUSION

On remand, the court will need to recalculate the number of records wrongfully

withheld. Any records that would have been disclosed by an adequate search will need to

be included in the calculation. Pursuant to our finding that the District wrongfully denied

records requested in April 2018, the superior court will need to determine the per diem

penalty for the records provided after July 16, 2018. In addition, the court will need to

55

No. 37996-5-III
*Cantu v. Yakima School Dist. No. 7*

add the 75 email attachments to the records wrongfully withheld.  After determining the

records withheld, the court can set a commensurate per diem penalty and determine

attorney fees and costs.

_____
                    Staab, J.

I CONCUR:

_____
        Siddoway, C.J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37996-5-III

FEARING, J. (concurring in part, dissenting in part) — I join in the majority's ruling that remands this appeal to the superior court for recalculation of the number of records wrongfully withheld and for redetermination of the per diem penalty. To the extent that the majority's ruling directs the superior court to add to its recalculation only the number of records that would have been disclosed by an adequate search, I dissent. I would direct the superior court to add to its recalculation the number of records not timely produced regardless of the reasonableness of the Yakima School District's search for requested records.

I hold the view, antagonistic to current Court of Appeals jurisprudence, that the Public Records Act (PRA), chapter 42.56 RCW, imposes no free-standing duty on a government agency to perform an adequate search for requested records. I will refer to this ostensible duty as the reasonable search or adequate search rule. Under my contrarian perspective, a court may not grant a public records requester relief for any inadequate search by itself. Conversely, under my dissenting stance, a court may not relieve a public agency from liability for failing to produce a requested record if the

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

agency exercised reasonable efforts to locate the record. I conclude that my

nonconforming viewpoint best effectuates the letter and the spirit of the PRA.

I begin with standard and familiar language heralding the purposes behind

Washington's PRA. The PRA promotes open government. *Neighborhood Alliance of*

*Spokane County v. Spokane County*, 172 Wn.2d 702, 719, 261 P.3d 119 (2011). The

PRA seeks to increase governmental transparency and accountability by making public

records accessible to Washington citizens. *John Doe A v. Washington State Patrol*, 185

Wn.2d 363, 371, 374 P.3d 63 (2016). These objectives partially motivate my rejection of

the Washington reasonable search rule.

The operative provision of the PRA reads:

> Each agency, in accordance with published rules, *shall make*
> *available for public inspection and copying all public records*, unless the
> record falls within the specific exemptions of subsection (8) of this section,
> this chapter, or other statute which exempts or prohibits disclosure of
> specific information or records.

RCW 42.56.070(1) (emphasis added). This section of the act seeks to render virtually

every document generated by an agency available to the public unless an exemption

applies. *Ameriquest Mortgage Co. v. Office of the Attorney General*, 177 Wn.2d 467,

485-86, 300 P.3d 799 (2013); *Rental Housing Association of Puget Sound v. City of Des*

*Moines*, 165 Wn.2d 525, 535, 199 P.3d 393 (2009); *Hearst Corp. v. Hoppe*, 90 Wn.2d

123, 128, 580 P.2d 246 (1978).

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

The PRA creates a private cause of action for a requester when the government agency fails to produce, in accordance with RCW 42.56.070(1), a public record not subject to an exemption. RCW 42.56.550 declares:

> (1) Upon the motion of any person *having been denied an opportunity* to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records.
> . . . .
> (4) Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

(Emphasis added.)

RCW 42.56.070(1), RCW 42.56.550, and all other sections of the PRA levy no burden on a government agency to reasonably search for records. Creating such an obligation violates principles of statutory construction. Courts may not read into a statute a meaning that is not there. *Burton v. Lehman*, 153 Wn.2d 416, 422-23, 103 P.3d 1230 (2005). When interpreting a statute, we must not add words when the legislature has chosen not to include them. *Lake v. Woodcreek Homeowners Association*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

3

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

The majority correctly notes that Washington decisions, despite the absence of statutory language demanding any form of a records search, promote the adequate search rule. The Washington Supreme Court wrote in *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 719 (2011), that the court focuses on the adequacy of a search, not whether responsive documents exist but were not disclosed or produced. Accordingly, a search need not be perfect, only adequate. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 720 (2011). The Supreme Court compared an inadequate search to the denial of production of a record. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 721 (2011).

Despite its discussion of a reasonable search, the Washington Supreme Court, in *Neighborhood Alliance*, recognized that the PRA falls silent about what constitutes an adequate search. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 719 (2011). The high court should have added that the PRA also does not read that an agency holds an obligation to conduct a reasonable search.

The Washington Court of Appeals has followed the language from *Neighborhood Alliance* and adopted a rule that the PRA requires a government agency to conduct an adequate search in response to a public records request. *West v. City of Tacoma*, 12 Wn. App. 2d 45, 78, 456 P.3d 894 (2020); *Rufin v. City of Seattle*, 199 Wn. App. 348, 356, 398 P.3d 1237 (2017); *Block v. City of Gold Bar*, 189 Wn. App. 262, 266, 355 P.3d 266

4

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

(2015); *Hobbs v. State*, 183 Wn. App. 925, 943, 335 P.3d 1004 (2014); *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 866, 288 P.3d 384 (2012). The Supreme Court restated, but did not apply, the reasonable search rule in *Nissen v. Pierce County*, 183 Wn.2d 863, 885, 357 P.3d 45 (2015).

According to the Court of Appeals, under the adequate search rule, the failure to adequately search for responsive documents forms a violation of the PRA. *West v. City of Tacoma*, 12 Wn. App. 2d 45, 78 (2020). The agency must conduct a search reasonably calculated to uncover all relevant documents. *West v. City of Tacoma*, 12 Wn. App. 2d 45, 79 (2020). We conduct a fact-specific inquiry to determine if a search is reasonable. *West v. City of Tacoma*, 12 Wn. App. 2d 45, 79 (2020). The mere fact that a record is eventually found does not itself establish the inadequacy of an agency's search. *Kozol v. Department of Corrections*, 192 Wn. App. 1, 8, 366 P.3d 933 (2015).

Contrary to repeated analysis by the Washington Court of Appeals, the Supreme Court, in *Neighborhood Alliance*, did not hold that an inadequate search forms an independent cause of action. The court instead reserved for another day the question of whether the PRA authorizes a penalty if the requester would otherwise have no remedy for an unreasonable search. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 724 (2011). The court limited its holding to characterizing an inadequate search as an aggravating factor to be considered in setting the daily penalty amount.

5

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

The Washington PRA closely parallels the federal Freedom of Information Act

(FOIA), and thus judicial interpretations of the federal act usually assist in construing our

own. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128 (1978). In *Neighborhood Alliance*, the

Washington Supreme Court followed federal decisions that impose an enforceable duty,

under FOIA, on federal agencies to conduct an adequate search. Some of those decisions

now include *Rojas v. Federal Aviation Administration*, 927 F.3d 1046, 1052-53 (9th Cir.

2019), *superseded on reh'g*, 989 F.3d 666, 2021; *Ancient Coin Collectors Guild v. U.S.*

*Department of State*, 641 F.3d 504, 514 (D.C. Cir. 2011); *Trentadue v. F.B.I.*, 572 F.3d

794 (10th Cir. 2009); *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353 (4th Cir.

2009); *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235 (11th Cir.

2008); *Abdelfattah v. U.S. Department of Homeland Security*, 488 F.3d 178 (3rd Cir.

2007); *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d. Cir. 1999);

*Patterson v. Internal Revenue Service*, 56 F.3d 832 (7th Cir. 1995); *Miller v. U.S.*

*Department of State*, 779 F.2d 1378 (9th Cir. 1985).

The imposition of an enforceable duty to search makes sense under FOIA because

the federal act expressly imposes such an onus on the government agency. 5 U.S.C. §

552(a)(3) declares:

> (A) Except with respect to the records made available under
> paragraphs (1) and (2) of this subsection, and except as provided in
> subparagraph (E), each agency, upon any request for records which (i)
> reasonably describes such records and (ii) is made in accordance with

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

> published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.
>
> . . . .
>
> (C) In responding under this paragraph to a request for records, an agency *shall make reasonable efforts to search* for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system.
>
> (D) For purposes of this paragraph, the term "search" means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request.

(Emphasis added). To repeat my theme, the Washington PRA admits no such language regarding a search. Thus, Washington should not adopt the federal view. Washington courts do not adopt the construction placed on a similar federal statute if the language of the statute in Washington substantially differs from the language in the United States statute. *Everett Concrete Products, Inc. v. Department of Labor & Industries*, 109 Wn.2d 819, 826, 748 P.2d 1112 (1988).

Advocates of government transparency may welcome an adequate search rule as effectuating the values behind the PRA. The opposite result has ensued, however. The Washington Court of Appeals has contorted and distorted the supposed duty of an adequate search into a gift of immunity from liability when the agency conducts a reasonable search but fails to produce an extant document. Thus, even if the public records requester establishes that the government agency failed to produce a record identified by him or her, the court grants the agency safe harbor if the court deems the agency performed a reasonable search. Thrice, this court has affirmed summary

7

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

judgment dismissal of PRA claims because of an adequate search despite evidence that the government agency failed to produce one or more requested record. *Rufin v. City of Seattle*, 199 Wn. App. 348 (2017); *Block v. City of Gold Bar*, 189 Wn. App. 262 (2015); *Hobbs v. State*, 183 Wn. App. 925 (2014). In the end, the reasonable search rule has caused more harm than good to the public and has thwarted government accountability, responsibility, and transparency.

Contrary to *Rufin v. City of Seattle*, *Block v. City of Gold Bar*, and *Hobbs v. State*, no Washington statute grants immunity when the government agency fails to disclose a record or produce an unexempted document. Instead, RCW 42.56.550 affords the requester a cause of action for any failure to produce unexempted records, and the statute grants the superior court discretion to impose sanctions up to $100 per day for a violation.

The adequate search rule conflicts with other principles pronounced by the Washington Supreme Court. Withholding a nonexempt document constitutes wrongful withholding and violates the PRA. *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010). Even according to the Supreme Court, in *Neighborhood Alliance of Spokane County v. Spokane County*, agencies must disclose any public record on request unless the record falls within a specific, enumerated exemption. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 714-15 (2011).

I recognize that a regulation adopted by the Washington Attorney General, WAC 44-14-04003(10), imposes on a government agency an obligation to "conduct an

8

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

objectively reasonable search for responsive records." Nevertheless, regulations inconsistent with or broader than a statute they implement are invalid. *Washington State Hospital Association v. Department of Health*, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015); *Center for Biological Diversity v. Department of Fish & Wildlife*, 14 Wn. App. 2d 945, 967, 474 P.3d 1107 (2020). When statutory language is plain and unambiguous, a court will not construe the statute but will glean the legislative intent from the words of the statute itself, regardless of a contrary interpretation by an administrative agency. *Burton v. Lehman*, 153 Wn.2d 416, 422-23 (2005); *Bravo v. Dolsen Companies*, 125 Wn.2d 745, 752, 888 P.2d 147 (1995).

To fulfill the purpose behind the PRA, a government agency should be held liable for failing to produce a requested record regardless of the extent of the search performed by the agency. The PRA, absent an exemption, renders all records available for review and reading by the public, not just those records that the government agency finds with a reasonable search. The public deserves access to public records no matter the difficulty behind a search. We must interpret the PRA liberally and in light of the people's insistence that they have information about the workings of the government they created. Imposing strict liability on the agency for failure to produce a record will encourage agencies to exert proactive steps to catalogue records into a system that facilitates the ready production of all records on hand.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

I concede an anomaly could arise under my denunciation of the adequate search rule. A government agency could fail to conduct an adequate search but fortuitously produce all records requested. In such an instance, any reasonable search rule would serve no purpose in penalizing the agency since it fulfilled the PRA by producing all demanded documents.

I agree that a duty to reasonably search may facilitate the production of records requested. Also, unless the government agency conducts a reasonable search, the requester may never know whether the agency produced all requested documents. Going further, the government agency may need to detail the actions taken pursuant to a public records search in order to show the reasonableness of the search and to thereby convince the court that it produced all requested documents. For this reason, the imposition of an unattached duty, outside the confines of a duty to produce the records sought, will usually lack any consequence in discrete cases.

Instead of shielding the government agency from liability for failing to produce a requested record, the adequacy of the search should influence the penalty to be imposed by the superior court in the event the government agency fails to produce a record. In *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 467-68, 229 P.3d 735 (2010), the Supreme Court outlined seven mitigating and nine aggravating factors for a superior court to consider when imposing a daily penalty. The aggravating factors generally are a reverse image of the mitigating factors. None of the mitigating factors explicitly mention

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

the adequacy of the search as a factor, but the reasonableness of the search would fall within the abating categories of an agency's good faith, honest, timely and strict compliance with PRA procedures; the helpfulness of the agency to the public records requester; and the existence of agency systems to track and retrieve public records. The Washington Supreme Court recognized this limited approach to the relevance of an inadequate search in its seminal decision, *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 724 (2011).

In Andrea Cantu's appeal, the majority rightly concludes that the Yakima School District failed to adopt reasonable policies and practices and employ a knowledgeable employee to perform sufficient and timely searches. In turn, the school district failed to conduct a reasonable search to produce records sought by Cantu. Nevertheless, these failures should not by themselves lead to liability or the imposition of penalties. Instead, the superior court should impose penalties based on the number of records omitted in production and the days of omission. Conversely, to the extent the school district reasonably searched for an omitted record, the adequate search should impact the amount of the penalty, not whether the school district violated the PRA.

I recognize the plight of government agencies, particularly small agencies, being inundated by public records requests, including some requests filed in an attempt to win awards in the event the agency fails to timely produce a record. Nevertheless, the Yakima School District did not face this dilemma with Andrea Cantu's request.

11

No. 37996-5-III
*Cantu v. Yakima School District No. 7*

Regardless, any relief from harassment imposed by serial requesters should come from

the legislature or in the form of reduction of penalties when a violation occurs.

I concur in part and dissent in part:

_____
Fearing, J.